DFW VENDING, INC. d/b/a Baby Dolls # 5, Buddy Wayne Robinson, M.M. Allen, M. Beazley, C. Coon, S.L. Belinsky, G. Moore, and B. Coffman, Plaintiffs,

v.

JEFFERSON COUNTY, TEXAS, and Mitch Woods, Jefferson County Sheriff, Defendants.

No. 1:97–CV–611.

United States District Court, E.D. Texas, Beaumont Division.

Jan. 7, 1998.

Nelson T. Hensley, Houston, TX, for Plaintiffs.

Thomas F. Rugg, Asst. Dist. Atty., Beaumont, TX, for Defendants.

*ORDER OVERRULING PLAINTIFFS' OBJECTIONS AND ADOPTING REPORT OF UNITED STATES MAGISTRATE JUDGE DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION*

SCHELL, Chief Judge.

Plaintiffs DFW VENDING, INC., d/b/a BABY DOLLS #5, M.M. ALLEN, M. BEAZLEY, C. COON, S.L. BELINSKY, G. MOORE, and B. COFFMAN, filed the present action on October 23, 1997. The complaint requests injunctive relief from the Sexually Oriented Business Regulations ("Regulations") adopted by the Commissioners Court of Jefferson County, Texas, and a declaratory judgment ruling the Regulations unconstitutional. Pls.' Am.Compl. at 13–14. Additionally, the complaint asks for monetary damages.[1] Also on October 23, 1997, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction.

■ The case was referred to United States Magistrate Judge Earl S. Hines pursuant to Title 28, United States Code § 636,[2] for review, hearing if necessary, and report and recommendation of all pretrial matters and jury selection, if any. The magistrate judge filed a Report and Recommendation on November 26, 1997. The magistrate judge recommends that Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction be denied. Plaintiffs filed Objections to the Report and Recommendation on December 8, 1997 (hereinafter "Plaintiff's Objections"). This court has received and considered the Report and Recommendation, along with the record, pleadings, and all available evidence. The court is required to conduct a *de novo* review of the specific portions of the report to which objections are made. FED.R.CIV.P. 72(b).[3]

1. The alleged monetary damages claimed are the following: loss of customers, loss of economic opportunity, loss of profit, loss of employment, and cost of litigation. Pls.' Orig.Compl. at 14, ¶ 28. Additionally, Plaintiffs claim general damages for the loss of civil rights, and attorney's fees. *Id.* at 14, ¶¶ 28, 30.

2. *See* E.D.TEX. LOCAL R.APPX. B, RULE 1(D)(1)(a) (allowing for a report and recommendation under 28 U.S.C. § 636 when restraining orders and/or injunctive relief is sought).

3. Plaintiffs assert, *inter alia*, a blanket objection to the entire Report and Recommendation in ¶ 1 of their Objections. The propriety of such a blanket objection is doubtful since objections to a magistrate judge's Report and Recommendation must be (1) specific, (2) in writing, and (3) served and filed within ten days. 28 U.S.C. § 636; FED.R.CIV.P. 6(a), 6(b), 72(b). A blanket objection

In this case, the court has conducted a *de novo* review and Plaintiffs' Objections are OVERRULED. The court hereby ADOPTS the Report and Recommendation in its entirety. Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction is hereby DENIED.

### I. FACTUAL BACKGROUND.

Plaintiffs have sued Jefferson County and its sheriff in order to enjoin enforcement of the Sexually Oriented Business Regulations ("Regulations") adopted by the Commissioners Court of Jefferson County. The magistrate judge includes in his Report and Recommendation a full background of the history behind the regulations, and any recitation of the applicable facts would be unduly repetitive. *See* Report and Recommendation at 2–5, 6–9, 10–11. The court hereby ADOPTS the facts as determined by the magistrate judge in the Report and Recommendation.

### II. PLAINTIFFS' OBJECTIONS

Plaintiffs object to the Report and Recommendation on three specific grounds. First, Plaintiffs claim that they were denied an opportunity to present testimony and other essential evidence in support of their motion. Pls.' Objs. at 2, ¶ 2. Second, Plaintiffs challenge the conclusion that the ordinance is content-neutral. *Id* . at 2, ¶ 3. Third, Plaintiffs argue that the preliminary injunction should at least issue against the provisions prohibiting alcohol consumption and possession, because state law completely preempts local governmental regulation. *Id.* at 3, ¶ 4.

### A. *Plaintiffs Had the Opportunity to Present Evidence*

■ Plaintiffs claim that they were denied the opportunity to present testimony and other evidence in support of their motion. *Id.* at 2, ¶ 2. The court disagrees. The magistrate judge held two separate evidentiary hearings. The court admitted all evidence proffered by the parties, and no evidence was excluded. Plaintiffs chose only to offer sworn affidavits in the first hearing, and a copy of a Harris County ordinance in the

second. The court finds no evidence that Plaintiffs were prevented or discouraged from offering evidence at either hearing. Indeed, the court finds that the magistrate judge provided ample opportunity to present evidence. Thus, Plaintiffs' objection is OVERRULED.

### B. *The Regulations are Content–Neutral*

■ Plaintiffs also object to the Report and Recommendation insofar as it finds that the Regulations are content-neutral. *Id.* at 2, ¶ 3. Plaintiffs' primary argument is that the magistrate judge based his conclusion on insufficient evidence. *Id.* First, Plaintiffs assert that the magistrate judge improperly relied on Jefferson County's adoption of findings made by Harris County. Second, Plaintiffs argue that the magistrate judge also relied on a state law to justify the Regulations, but that the state law relied upon was ambiguous as to the effects of sexually oriented businesses and, therefore, was insufficient to support a finding of content-neutrality. *Id.*

■ In determining whether undesirable secondary effects accompany sexually oriented businesses, Jefferson County can properly rely on findings of the Harris County Commissioners Court. *City of Renton v. Playtime Theatres*, 475 U.S. 41, 51–52, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *Lakeland Lounge of Jackson v. City of Jackson*, 973 F.2d 1255, 1258 (5th Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 469 (1993); *see also* Report and Recommendation at 17–18 (detailing the Harris County findings and case law indicating it was proper for Jefferson County to base its regulations on findings from another legislative body). Harris County gathered those findings when it adopted regulations governing sexually oriented businesses. These findings are sufficient to establish the Regulations as content-neutral. Report and Recommendation at 18. Jefferson County does not have to make its own independent findings in order to support the Regulations. *Lakeland Lounge*, 973

---

fails the specificity requirement. Nevertheless, the court has conducted a *de novo* review of the

entire Report and Recommendation and fully adopts it. *See infra* Section III.

F.2d at 1258; Report and Recommendation at 18, and cases cited therein.[4]

Additionally, even assuming the Harris County findings were inadequate or could not be properly used in Jefferson County, the Jefferson County Commissioners had ample support for the Regulations in the absence of the Harris County findings. The Commissioners also relied on the findings of Judge Carl R. Griffith, Jr., a former Jefferson County sheriff, that sexually oriented businesses in Jefferson County lead to increased prostitution. Report and Recommendation at 11. Further, the Commissioners relied upon findings by the Texas legislature that such businesses may cause increased criminal activity. Report and Recommendation at 18–19 (citing Tex.Loc.Gov't.Code § 243.001(a)).

Plaintiffs object to the use of Tex.Loc. Gov't.Code § 243.001(a) as support for a finding that detrimental secondary effects arise from sexually oriented businesses and thus that the Regulations are content-neutral. Pls.' Objs. at 2–3. Section 243.001(a) reads, in relevant part: "The legislature finds that the unrestricted operation of certain sexually oriented businesses may be detrimental to the public health, safety, and welfare by contributing to the decline of residential and business neighborhoods and the growth of criminal activity." Tex.Loc. Gov't.Code § 243.001(a) (Vernon Supp.1998). Plaintiffs' argument is that since the word "may" is used in the provision, the legislature did not specifically find that sexually oriented businesses *are* detrimental, only that they *may* be detrimental.

Plaintiffs' objection is without merit. First, this statute is only one finding relied upon by Jefferson County and, subsequently, the magistrate judge. As stated above, the other findings used by the Jefferson County Commissioners are sufficient to establish the content-neutrality of the Regulations. Second, simply because the Texas legislature used the word "may" does not mean that the legislature did not make a finding. "The purpose of [Chapter 243] is to provide local governments a means of remedying this problem." *Id.* The finding that the detrimental secondary effects may occur is one way in which the state helps local communities accomplish that goal.

As the magistrate judge points out, the process of relying on a legislative report is within the discretion of the legislature contemplating a particular action. "The choice of whether [Jefferson County] should rely upon one report over another is fully within legislative discretion, [and] the court need only conclude that a reasonable legislature would have enacted the challenged ordinance." *Id.* at 19 (citing *SDJ, Inc. v. City of Houston,* 837 F.2d 1268, 1274 (5th Cir.1988), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989)). It is reasonable that to conclude that, if the Texas legislature found that detrimental secondary effects may occur as a result of sexually oriented businesses, then Jefferson County may find that its community is no exception and that these detrimental secondary effects have in fact occurred. Plaintiffs had the opportunity to present evidence in opposition to this finding, but failed to do so. Accordingly, the court agrees with the Report and Recommendation that the Regulations are content-neutral. *See* Report and Recommendation at 15–19. Plaintiffs' objection is OVERRULED.

### C. The Court did not Invoke Supplemental Jurisdiction to Determine the Applicability of the Alcohol Regulations

Plaintiffs' final objection is that state law preempts the local government regulation of possession and consumption of alcohol. Pls.' Objs. at 3, ¶ 4. This matter is not properly before the court. Plaintiffs' complaint does not invoke the court's supplemental jurisdiction; it attacks the Regulations only on federal constitutional grounds. *See* Pls.' Am. Compl. at 1–2, ¶ 1. Moreover, the record reflects that at oral argument, Plaintiffs' counsel attacked the ordinance's alcohol provisions only on federal grounds. The magistrate judge's findings as to the federal constitutional arguments regarding the regulation

4. The court is aware that the Harris County regulations are also under constitutional attack in federal court. The record in this case, however, contains no evidentiary basis for concluding that the *findings* that Harris County relied upon are inadequate.

of the sale of alcohol are correct, and the court sees nothing which needs to be clarified or changed. *See* Report and Recommendation at 32–33.

It was not until shortly before the Report and Recommendation was due that Plaintiffs submitted a memorandum urging the court to exercise supplemental jurisdiction, which would allow the court to explore the question of whether state law preempts the local ordinances. Exercising supplemental jurisdiction over a state law claim is within the discretion of a federal court. 28 U.S.C. § 1367(a), (c)(3); *Sigmon v. Southwest Airlines Co.*, 110 F.3d 1200, 1203 (5th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 370, 139 L.Ed.2d 268 (1997). The questions raised by Plaintiffs require a detailed examination of state/local preemption that is better suited to the expertise of a state court, and the court refuses to exercise supplemental jurisdiction here. Since this question of law is not properly before the court, Plaintiffs' objection is OVERRULED.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' objections are OVERRULED. The findings of fact and conclusions of law of the magistrate judge are correct and the report of the magistrate judge is ADOPTED in its entirety. Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction is hereby DENIED.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

HINES, United States Magistrate Judge.

The owner of an adult entertainment enterprise and several nude dancers[1] filed this suit alleging that Sexually Oriented Business Regulations adopted by the Commissioners Court of Jefferson County, Texas violate federal constitutional law. Jurisdiction is proper according to 28 U.S.C. § 1331 (1993) and 42 U.S.C. § 1983.

Pursuant to General Order 91–16 dated September 12, 1991, this action was referred to the undersigned United States Magistrate Judge for review, hearing, if necessary, and report and recommendation of all pretrial matters and jury selection, if any. *See also* 28 U.S.C. § 636 and Local Rules for the Assignment of Duties to United States Magistrate Judges.

Presently before the court is plaintiffs' "Motion for Temporary Restraining Order Preliminary Injunction." This report considers the motion and recommends appropriate disposition thereof.

### I. INTRODUCTION

America's consensus blueprint specifies liberty and justice for all. Lincoln's parable regarding competing views of liberty poignantly illustrates that constructing society according to plans poses great difficulty. Lincoln said:

> The world has never had a good definition of the word liberty. And the American people just now are much in want of one. We all declare for liberty; but in using the same word we do not mean the same thing....

> The shepherd drives the wolf from the sheep's throat, for which the sheep thanks the shepherd as his liberator, while the wolf denounces him for the same act.... Plainly the sheep and the wolf are not agreed upon a definition of liberty.[2]

Lincoln's parable permits an allegorical introduction to this case. The Commissioners Court of Jefferson County, the duly elected legislative and executive governing body for unincorporated areas in Jefferson County, Texas, claims the shepherd's role. Utilizing its police power, it enacted an ordinance governing sexually oriented businesses. Its purpose is to prevent crime, diminished property

---

1. Plaintiffs in this action are Baby Dolls # 5, a nude cabaret, Robinson, operator/manager of Baby Dolls # 5, and M.M. Allen, M. Beazley, C. Coon, S.L. Belinsky, G. Moore, and B. Coffman, nude entertainers who perform at Baby Dolls # 5. The dancers' first names were not given.

2. *Address at the Sanitary Fair* (April 18, 1864), *Reprinted in, Bartlett's Familiar Quotations,* at 523 (Little, Brown & Co., 15th ed.1980).

values and proliferation of disease, all thought to be secondarily associated with such establishments. The ordinance "drives the wolf from the sheep's throat" by establishing distance separation requirements between nude dancers and patrons and by preventing on-premise consumption of alcohol by patrons, employees and dancers.

Plaintiffs, like Lincoln's wolf, denounce the ordinance as unlawfully depriving them of a legitimate means of sustenance. They claim the First Amendment entitles them to give artistic performances designed to convey an erotic or other protected message that is enhanced by total nudity. Such performances provide sustenance because plaintiffs charge for admission to their establishment and receive additional payment for specific nude dance performances called "table dances."[3] Plaintiffs fear that nude dance distance separation requirements and prohibition of alcohol will destroy the market for their performances. Thus, plaintiffs view the ordinance as depriving them of an honest living.

Plaintiffs also contend there is no evidence of increased crime associated with their conduct. Even if there were, plaintiffs contend that existing provisions of Texas law provide an effective means for deterring crime. Finally, plaintiffs say the ordinance's alcohol provisions violate their constitutional rights to Equal Protection, and that Jefferson County could use less intrusive means to accomplish its goals.

Unlike Lincoln's parable, not all "sheep" thank their "shepherd." There is a distinct market for up-close, nude, alcohol-enhanced table dances. Law-abiding customers envision their liberty as encompassing the right to spend money in the erotic entertainment economy. Thus, at least some "sheep" voluntarily depart with their fleece and side with the "wolf."

America's experiment with democratic self governance involves an exquisite balance between majority rule and minority rights. The majority, through its elected government, has substantial interest in preventing prostitution and other crimes, diminution of property values and proliferation of disease. However, shared revulsion toward these alleged undesirable secondary effects of sexually oriented businesses could obscure damage to plaintiffs' First Amendment rights.

The disputing factions now resort to court where judicial constitutional scrutiny must balance effectiveness of regulation with burdens on protected expression. Judicial balancing of government's and citizens' rights is a daunting task. Especially in First Amendment cases, it leads to surprising and controversial results. Application of First Amendment principles requires removal of manger scenes from governmental holiday displays,[4] but permits flag burning, draft-card burning, suggestive arm-bands, and in-your-face epithets screamed at employees and clients of abortion services providers.[5] Consequently, recent comments of an eminent syndicated columnist are appropriate:

> The trouble is that once these things get to court ... it's almost impossible for judges to do what most of us would find merely sensible.[6]

## II. PRELIMINARY INJUNCTION REQUIREMENTS

Preliminary injunctions are provisional remedies authorized under FED.R.CIV.P. 65.

3. A "table dance" is a dance performed by one of the dancers exclusively for and in front of a particular seated customer. *Reich v. ABC/York–Estes Corp.*, No. 91–C–6265, 1997 WL 264379, at *1 (N.D.Ill.1997).

4. *County of Allegheny v. A.C.L.U.*, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989).

5. *See Texas v. Johnson*, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (flag burning); *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (draft card burning); *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21

L.Ed.2d 731 (1969) (arm bands); *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) (nude dancing); *Schenck v. Pro–Choice Network of Western New York*, 519 U.S. 357, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997) (floating buffer around persons entering abortion clinic).

6. William Raspberry, *A Way to Keep Religion in Public Life*, Chicago Tribune, October 21, 1997, Commentary Section at 17; *see also*, William Raspberry, *Third view melds into church-state hot debate*, The Beaumont Enterprise, October 27, 1997 at 7A.

Case law establishes that a preliminary injunction may be granted only if the movant shows: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the plaintiff outweighs the threatened injury to the defendant; and (4) that granting the preliminary injunction is not adverse to the public interests. *House the Homeless, Inc. v. Widnall,* 94 F.3d 176, 180 (5th Cir.1996), *cert. denied,* ——— U.S. ———, 117 S.Ct. 1434, 137 L.Ed.2d 541 (1997); *Rodriguez v. United States,* 66 F.3d 95, 97 (5th Cir.1995), *cert. denied,* 516 U.S. 1166, 116 S.Ct. 1058, 134 L.Ed.2d 202 (1996); *Cherokee Pump & Equip. Inc. v. Aurora Pump,* 38 F.3d 246, 249 (5th Cir.1994); *Clark v. Prichard,* 812 F.2d 991, 993 (5th Cir.1987); *Mississippi Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir.1985) (citations omitted).

■ The burden of establishing these four requirements is heavy. *See Enterprise Internat'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 472 (5th Cir.1985). Injunctive relief is considered "an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci,* 862 F.2d 1209, 1211 (5th Cir.1989) (*quoting, Holland Am.Ins. Co. v. Succession of Roy,* 777 F.2d 992, 997 (5th Cir.1985)); *Mississippi Power & Light Co.,* 760 F.2d at 621 ("[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule"). Moreover, in this circuit, when a movant fails to establish any one of the four elements required to obtain an injunction, the inquiry ends and the motion must fail. *Kern River Gas Transmission Co. v. Coastal*

*Corp.,* 899 F.2d 1458, 1465 (5th Cir.), *cert. denied,* 498 U.S. 952, 111 S.Ct. 374, 112 L.Ed.2d 336 (1990) (upon failing to establish one element, court refused to consider whether movant met remaining elements of prima facie case); *Plains Cotton Coop. Ass'n v. Goodpasture Computer Serv., Inc.,* 807 F.2d 1256, 1261 (5th Cir.), *cert. denied,* 484 U.S. 821, 108 S.Ct. 80, 98 L.Ed.2d 42 (1987).

In the instant case, the parties focus their arguments at the third requirement, i.e., whether plaintiffs will likely succeed on the merits. Therefore, this report first examines whether plaintiffs enjoy a substantial likelihood of success.

### III. THE JEFFERSON COUNTY ORDINANCE

Acting pursuant to Chapter 243 of the Texas Local Government Code,[7] on July 18, 1997, the Jefferson County Commissioners Court enacted the Sexually Oriented Business Regulations ("SOBRs") to affect unincorporated areas of Jefferson County, Texas. (See copy attached to Am.Compl.). The SOBRs were adopted in final version on September 16, 1997.[8] (Am.Compl.app.B). The SOBRs have express language describing the Commissioners Court's intent:

[I]t is the intent of the Commissioners Court of Jefferson County to exercise its police power, as established under Chapter 243 of the Local Government Code, to establish reasonable and uniform regulation of sexually oriented businesses to promote and protect the health, safety and general welfare of the citizens of Jefferson County.

JEFFERSON COUNTY, TEX., SEX. ORIENTED BUS. REG. § I(b) (1997) (hereinafter "SEX. ORIENT-

---

7. Section 243 provides: (a) the legislature finds that the unrestricted operation of certain sexually oriented businesses may be detrimental to the public health, safety, and welfare by contributing to the decline of residential and business neighborhoods and the growth of criminal activity. The purpose of this chapter is to provide local governments a means of remedying this problem. TEX.LOC.GOV'T CODE ANN. § 243.001(a) (Vernon Supp.1997).

8. A sexually oriented business enterprise is defined as "any commercial enterprise the primary

business of which is offering of a service or the selling, renting, or exhibiting of devices or any other items intended to provide sexual stimulation or sexual gratification to the customer. This definition includes but is not limited to: sex parlors, nude studios; modeling studios; love parlors; adult bookstores; adult movie theaters; adult video arcades; adult movie arcades; adult video stores; adult motels; adult cabarets; escort agencies; and sexual encounter centers." SEX ORIENTED BUS.REG. § IV(q).

ED BUS.REG."). Further, the Commissioners Court, acknowledging that this regulation may indirectly affect protected rights, expressly disavowed any intention to suppress free speech.

The provisions of these regulations have neither the intent nor the effect of imposing limits or restrictions of (sic) the content of any communicative material, including sexually oriented material; nor is it the intent or effect of these regulations to restrict or deny adults access to sexually oriented material protected by the First Amendment.

SEX. ORIENTED BUS.REG § 1(c).

The provisions at the center of this lawsuit are contained in Title XXII of the ordinance. Relevant provisions are:

SECTION XXII—*OPERATING REQUIREMENTS FOR ENTERPRISES*

(a) The following shall be . violations of these regulations . . .

(2) for any person to be at an enterprise totally nude, unless performing in accordance with (13) herein. Private rooms at adult motels, public restrooms, and employees' designated dressing rooms that are not visible or accessible to patrons are excepted from this prohibition;

(3) for any employee, owner, or enterprise operator to allow any patron, to become totally nude, nude or in a state of nudity a the premises of the enterprise; Private rooms at adult motels, public restrooms, and employees' designated dressing rooms that are not visible or accessible to patrons are excepted from this prohibition;

* * *

(13) for any person performing totally nude at an enterprise to do so less than six (6) feet from the nearest patron and on a stage less than eighteen (18) inches above floor level;

(14) for the owner or enterprise operator of a Class I enterprise [9] to allow any location within the enterprise to be used for the purpose of totally nude live exhibitions unless it is marked with clear indications of the six (6) foot zone. The absence of this demarcation will create a presumption that there have been violations of these regulations during performances in unmarked areas;

(15) for an employee of a Class I enterprise to consume any alcoholic beverage on the premises of any Class I enterprise where said employee is on duty, has been on duty within the previous 12 hours or is scheduled to be on duty within the next 12 hours.

(16) for any Class II enterprise [10] to consume any alcoholic beverage on the premises of any location where said Class II enterprise is performing or providing any service, has within the preceding 12 hours performed or provided any service, or is scheduled to perform or provide any service within he [sic] next 12 hours.

(17) for any person to possess or consume any alcoholic beverage on the premises of any Class I enterprise unless such possession and/or consumption is authorized by a permit or license issued pursuant to the Texas Alcoholic Beverage Code.

SEX. ORIENTED BUS.REG. §§ XXII (a)(2), (3), (13), (14), (15), (16) and (17).

In lay terms, the SOBRs prohibit any dancer from being totally nude, unless located beyond a clearly demarcated six foot buffer zone and at an 18 inch elevation. *Id.* at §§ (a)(2), (13), and (14). Patrons are prohibited from becoming nude at any time. *Id.* at § (a)(3). No one, unless authorized by the Texas Alcohol and Beverage Code may possess or consume alcohol on the premises of a sexually oriented business. *Id.* at §§ (a)(17). Even if a Texas Alcohol and Beverage Commission permit authorizes possession and consumption of alcoholic beverages on the premises, dancers and employees are prohibited from consuming alcohol on the premises

9. A Class I enterprise is defined as any that conducts business regularly at a specific location. SEX. ORIENTED BUS REG § (q)(1)(ii).

10. Class II enterprises are defined as "individuals who offer, for compensation, a service intended to provide sexual stimulation or sexual gratifi- cation to patrons at any location in the County, unless that individual is an employee of a Class I enterprise working at the location permitted under a Class I [permit]." SEX. ORIENTED BUS.REG § (q)(1)(ii).

during work or for 12 hours before or after working. *Id.* at §§ (a)(15)–(16).

## IV. PARTY CONTENTIONS

Plaintiffs claim that the ordinance is overbroad and not narrowly tailored because it sweeps too much First Amendment protected activity into its prohibitions. They further assert that the ordinance is vague by not providing law abiding citizens notice of how to comply with the ordinance and by failing to adequately guide law enforcement in carrying out its terms. Plaintiffs seek to temporarily enjoin enforcement of the challenged provisions until trial on the merits.

Defendants maintain the SOBRs are constitutional and are a valid exercise of the County's legitimate police powers. The County argues its SOBRS target only "secondary effects," prostitution, spreading of disease, and decline in property values, found to accompany sexually oriented businesses. They claim the ordinance is narrowly tailored in that it seeks to regulate only businesses that exhibit the targeted secondary effects. Defendants deny that the ordinance is overbroad, claiming that any interference with plaintiffs' nude dance activities as it implicates First Amendment rights is only incidental.

## V. THE EVIDENTIARY RECORD

Plaintiffs Robinson, Coon, Belinsky, Beazley, Moore, and Allen offered personal affidavits and a copy of a Harris County, Texas ordinance regulating sexually oriented businesses in Jefferson County. Robinson is manager of Baby Dolls # 5. His affidavit claims compliance with the SOBRs could require a 20 foot in diameter protective circle around each table top. Such a requirement would substantially reduce the number of dancers and patrons at Baby Dolls # 5.[11] He claims the loss of revenues would render it economically impractical to operate his business.

The dancers' affidavits duplicate one another and make identical assertions. They claim enforcement of the ordinance will substantially reduce their ability to earn tips. They claim a large portion of their tips are earned in table dances in close proximity to patrons. The distance requirements, they assert, will greatly reduce their erotic message[12] which, in turn, will adversely affect their ability to earn tips. This could lead to their inability to find employment in the unincorporated areas of Jefferson County.

Defendants offer an affidavit of County Judge Carl. R. Griffith, Jr., formerly Sheriff of Jefferson County. Judge Griffith states that during his tenure as sheriff, there was an increase in prostitution in and around sexually oriented businesses in Jefferson County. He became aware of similar problems in Harris County that led that county to adopt sexually oriented business regulations. He then obtained and forwarded the Harris County regulation to the Jefferson County Commissioners Court when Jefferson County was considering regulating its sexually oriented businesses. Finally, Judge Griffith states that at least four sexually oriented businesses have opened in the unincorporated areas of Jefferson County over the past two years and that unrestricted growth of such businesses adversely affected property values and the quality of life.

## VI. REGULATION AFFECTING DANCING

### A. Constitutionality of Plaintiffs' Nude Dancing

 Nudity, per se, is not constitutionally protected conduct. *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 211 n. 7, 95 S.Ct. 2268, 2273 n. 7, 45 L.Ed.2d 125 (1975) (*quoting, Roth v. United States,* 354 U.S. 476, 512, 77 S.Ct. 1304, 1323, 1, L.Ed.2d 1498 (1957)) (Douglass, J., dissenting) (no one would suggest that the First Amendment permits nudity in public places). Further, while some kernel of expression can be found in almost

---

**11.** Robinson's notion of a 20 foot circle stems from the requirement that each nude dancer performing a table dance be at least 6 feet from any patron, including those who may mill about the cabaret.

**12.** Plaintiffs' asserted artistic erotic message includes oral communication, visual dance, and body smell.

every activity, *City of Dallas v. Stanglin,* 490 U.S. 19, 25, 109 S.Ct. 1591, 1595, 104 L.Ed.2d 18 (1989), nonperforming nude employees cannot claim First Amendment protection solely by virtue of their nudity. *Hang On, Inc. v. City of Arlington,* 65 F.3d 1248, 1254 (5th Cir.1995). As the Fifth Circuit Court of Appeals stated, "nudity is protected as speech only when combined with some other mode of expression which itself is entitled to first amendment protection." *Id.* (citing, *South Florida Free Beaches, Inc. v. City of Miami,* 734 F.2d 608, 610 (11th Cir.1984)) (alteration and internal quotations omitted).

■■■ Artistic dance, falls well within the ambit of First Amendment protection.[13] *Schad v. Mount Ephraim,* 452 U.S. 61, 66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981). Sex or its erotic message may also enjoy First Amendment protection. Simply because one faction of society may consider sexuality undesirable or troublesome, does not mean that sex and eroticism, when sought to be conveyed through artistic endeavors, are less worthy of constitutional protection. As stated in *Roth v. United States,* 354 U.S. 476, 490, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498 (1957):

> The portrayal of sex, e.g., in art, literature and scientific works, is not itself sufficient reason to deny material the constitutional protection of freedom of speech and press. Sex, a great and mysterious motive force in human life, has indisputably been a subject of absorbing interest to mankind through the ages; it is one of the vital problems of human interest and public concern.

This conclusion does not mean that all dance is protected. *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 581, 111 S.Ct. 2456, 2468, 115 L.Ed.2d 504 (1991) (Souter, J. concurring). Nevertheless, where the dance is enhanced by nudity and the message conveyed is eroticism, the dance and erotic message are protected by the First Amendment. *Id.,* 501 U.S. at 565, 111 S.Ct. at 2460 (citing, *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932, 95

S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975), *and Schad v. Mount Ephraim,* 452 U.S. at 66, 101 S.Ct. at 2181; *Hang On, Inc., supra).*

■■■ Nude dance, however, falls on the outer fringes of First Amendment protection, *Barnes v. Glen Theatre, Inc., supra;* *Woodall v. City of El Paso,* 49 F.3d 1120, 1122 (5th Cir.), *cert. denied,* 516 U.S. 988, 116 S.Ct. 516, 133 L.Ed.2d 425 (1995) (citing, *TK's Video, Inc. v. Denton County Texas,* 24 F.3d 705, 707 (5th Cir.1994)), and is afforded lesser protections than other types of speech, such as political speech. *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 49, 106 S.Ct. 925, 903, 89 L.Ed.2d 29 (1985); *see also, Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 70, 96 S.Ct. 2440, 2452, 49 L.Ed.2d 310 (1976) (plurality opinion) "it is manifest that society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political speech. . . ."

## B. Facial Challenges

■■■ The parties agree that plaintiffs mount a facial challenge to the Jefferson County ordinance. (Joint Resp. of Parties, Docket # 14). Facial challenges are the "most difficult challenges to mount successfully since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987); *see also, Barnes v. Moore,* 970 F.2d 12, 14 (5th Cir.) (per curiam), *cert. denied,* 506 U.S. 1021, 113 S.Ct. 656, 121 L.Ed.2d 582 (1992). Thus, a heavy burden faces plaintiffs making a facial challenge to the constitutionality of a regulation. *Id.*

## C. Constitutional Analysis in First Amendment Cases

To determine whether plaintiffs can show a substantial likelihood of carrying this heavy burden at trial, the Court must first determine the applicable standard of constitutional analysis.

---

**13.** "Congress shall make no law ... abridging the freedom of speech, or of the press . . . ." U.S. CONST. AMEND 1. The First Amendment is made applicable to the states by the Due process clause of the Fourteenth Amendment. *See Edwards v. South Carolina,* 372 U.S. 229, 235, 83 S.Ct. 680, 683, 9 L.Ed.2d 697 (1963).

## 1. Competing Views of the Parties

Plaintiffs contend the ordinance is aimed at particular conduct, to wit, their erotic message and is valid only if it survives strict scrutiny. Plaintiffs say the ordinance is valid only if it is reasonably necessary to achieve a compelling governmental interest as required by *R.A.V. v. St. Paul*, 505 U.S. 377, 395, 112 S.Ct. 2538, 2549, 120 L.Ed.2d 305 (1992), and be the "least restrictive" means to achieve that asserted end as set out in *Elrod v. Burns*, 427 U.S. 347, 361–65, 96 S.Ct. 2673, 2684–85, 49 L.Ed.2d 547 (1976). (Pl. Response to Order for Add'l Briefing). *R.A.V.* concerned a regulation prohibiting bias-motivated speech. After concluding that the statute targeted the speaker's particular ideologies, the Supreme Court stated that the majority may not silence speech based on its content. The Supreme Court then stated the test to evaluate content-based regulation: whether the ordinance was reasonably necessary to achieve a compelling governmental interest. *Id.* at 394, 112 S.Ct. at 2549.

In *Elrod*, the Supreme Court considered whether it was constitutional for public employees to be terminated from employment solely because of political affiliations. The Supreme Court noted the right to associate with the political party of one's choice is a basic fundamental right. The Court stated that significant impairments of First Amendment rights must survive exacting scrutiny. *Id.* at 362, 96 S.Ct. at 2684. Discussing the appropriate constitutional standard, the Court concluded that where the government targets protected activities, it will be upheld only if it furthers a vital governmental interest "by a means that is least restrictive of freedom." *Id.* at 363, 96 S.Ct. at 2685.

Defendants argue the ordinance is subject to the less stringent, symbolic speech test articulated in *Barnes v. Glen Theatre, supra.;* (Dft. Response to Order). That case involved a challenge against an Indiana law prohibiting public indecency. Two establishments desiring to provide totally nude dancing challenged the statute on First Amendment grounds. *Id.* at 565, 111 S.Ct. at 2460. The Supreme Court concluded that an ordinance regulating symbolic speech is valid if it

survived the four-part test enunciated in *United States v. O'Brien*, 391 U.S. at 376–77, 88 S.Ct. at 1678–79.

▮ To survive constitutional challenge under the *O'Brien* test, an ordinance must (1) be within the constitutional power of the government, (2) further an important or substantial governmental interest, (3) provide an asserted governmental interest unrelated to the suppression of free expression, and (4) ensure that any incidental restrictions on alleged First Amendment freedoms is no greater than essential. *Barnes v. Glen Theatre*, 501 U.S. at 566, 111 S.Ct. at 2460 *(citing, O'Brien,* 391 U.S. at 376–77, 88 S.Ct. at 1678–79).

## 2. Choosing the Appropriate Analytical Model

Since the parties correctly agree that nude dancing is conduct protected by the First Amendment, the choice between these competing analytical models depends upon whether the ordinance is content-based or content-neutral. Thus, as a threshold matter, the Court must determine whether the Jefferson County ordinance aims at plaintiffs' specific erotic message as contended by plaintiffs, or is content-neutral as defendants claim.

▮ When a regulation focuses on particular speech—that is, it seeks to suppress protected speech—it is considered content-based. *Madsen v. Women's Health Center*, 512 U.S. 753, 765, 114 S.Ct. 2516, 2525, 129 L.Ed.2d 593 (1994). On the other hand, so long as an ordinance is "justified without reference to the content of the regulated speech," *Ward v. Rock Against Racism*, 491 U.S. 781, 790, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989) (citations omitted), or serves purposes unrelated to the content of expression, it is deemed neutral, *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 295, 104 S.Ct. 3065, 3070, 82 L.Ed.2d 221 (1984), even if it has an incidental effect on a particular category of speech. *City of Renton v. Playtime Theatres*, 475 U.S. at 48, 106 S.Ct. at 929.

▮ The content-neutrality requirement can be met if the challenged ordinance seeks

to control secondary effects related to protected expression. This conclusion emanates from the controlling holding of *Barnes v. Glen Theatre*, 501 U.S. at 584, 111 S.Ct. at 2469 (Souter, J. concurring in judgement) (recognizing secondary effects as sufficient basis for governmental regulation of sexually oriented businesses.). *See Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129, 131–34 (6th Cir.1994) (discussing in detail *Barnes'* holdings and concluding that Justice Souter's "secondary effects" rationale embodied the Court's holding). Indeed, several courts have recognized and upheld regulations aimed at the undesirable secondary effects of sexually oriented businesses. *Renton*, 475 U.S. at 49, 106 S.Ct. at 929–30 ("ordinances designed to combat the undesirable secondary effects of [sexually oriented businesses] are to be reviewed under the standards applicable to content-neutral regulations"); *DLS, Inc.*, 107 F.3d at 411; *Tollis, Inc. v. San Bernardino County*, 827 F.2d 1329, 1332 (9th Cir.1987) (same); *Intern'l Food & Bev. Sys. v. City of Ft. Lauderdale*, 794 F.2d 1520, 1525 (11th Cir.1986); *Jones v. Wilkinson*, 800 F.2d 989, 996 (10th Cir.1986).

Secondary effects may serve as the basis of content-neutral municipal regulation. In *Lakeland Lounge of Jackson v. City of Jackson*, 973 F.2d 1255, 1258 (5th Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 469 (1993), the Fifth Circuit allowed a municipality to rely on secondary effects related to sexually oriented business to serve as the basis for finding the ordinance was content-neutral. This is a broad standard, in that it is not even necessary for municipal legislators to actually review specific studies of secondary effects, *Id.* Further, a municipality may rely on studies from other cities as the basis of its ordinance so long as whatever evidence the municipality relies upon is "reasonably believed to be relevant to the problem" that it faces. *Renton*, 475 U.S. at 51–52, 106 S.Ct. at 931; *Lakeland Lounge of Jackson*, *supra.* All that is required is that a "reasonable legislature with constitutional motives would have enacted the ordinance." *See SDJ, Inc. v. City of Houston*, 837 F.2d 1268, 1274 (5th Cir.1988), *cert. denied*, 489 U.S. 1052, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989).

### 3. The Ordinance is Content Neutral

Jefferson County has sought to regulate all nude dancing, irrespective of the message conveyed, when it occurs at sexually oriented businesses. The County's goals in enacting the SOBRs were to relieve the noted "secondary effects" of prostitution, disease, crime, and decreased property values. Because the ordinance can be enforced without reference to any message conveyed, the SOBRs are content-neutral and should be evaluated as any other regulation of expressive conduct.

The record contains ample evidence supporting Jefferson County's conclusion that it legitimately targets the asserted secondary effects. The SOBRs expressly state their purpose is to promote and protect the public, health and welfare and not to suppress any constitutionally protected activities. As stated above, Jefferson County also relied upon the findings of Harris County regarding its sexually oriented businesses. The Harris County findings indicated that sexually oriented businesses contributes to (1) lower property values, (2) greater criminal activity, particularly property value and sexual crimes (3) prostitution, (4) drug crimes, (5) changed characteristics of neighborhoods by making them unappealing to families with children, (6) increased need for law enforcement to monitor and police sexually oriented businesses, and (7) disease, which threatens public health. HARRIS COUNTY, TEXAS, REGULATIONS FOR SEXUALLY ORIENTED BUSINESSES, FINDINGS (1996). Defendants argued at oral argument and presented the affidavit of former Sheriff Griffith which collectively supports their claim that prostitution, disease, and declining property values are the true targets of the SOBRs. Finally, the Jefferson County Commissioners Court could rely on the explicit findings of the Texas States Legislature. The express language of Chapter 243, which authorizes local governmental regulation of sexually oriented businesses, states that sexually oriented businesses "may be detrimental to the public health, safety, and welfare" and may contribute to a growth in criminal activity. TEX. LOC. GOV'T CODE § 243.001(a).

Plaintiffs presented no evidence that the asserted secondary effects are not Jefferson County's true objective, but rather a pretext to target plaintiffs' free speech rights. Given the absence of contrary evidence, the fact that secondary effects are legitimate government objectives, and the ordinance expressly disavows any intent to violate any constitutionally protected rights, Sex. Oriented Bus. Reg. § 1(c), the regulations are content-neutral. *Hang On, Inc.*, 65 F.3d at 1254.

Plaintiffs suggested at oral argument that the County may not be sincere in claiming that it targets undesirable secondary effects. Plaintiffs also suggest that the data relied upon by the County was questionable because it was outdated. These unsupported contentions must be rejected. The Court does not engage in ad hoc evaluations of legislative judgment. The judiciary is not a super-legislature wherein judges sit to "apprise the wisdom" of a municipality's discretion. *Renton*, 475 U.S. at 52, 106 S.Ct. at 931, *quoting, American Mini Theatres, Inc.*, 427 U.S. at 71, 96 S.Ct. at 2453 (plurality decision). The choice of whether it should rely upon one report over another is fully within legislative discretion, the court need only conclude that a reasonable legislature would have enacted the challenged ordinance. *SDJ, Inc.* 837 F.2d at 1275; *1995 Venture I, Inc. v. Orange County, Tex.*, 947 F.Supp. 271, 278 (E.D.Tex.1996).

## D. Application

 As noted above in Section VI. A.3.(a), a content-neutral regulation that burdens expressive activity, or symbolic speech, such as the erotic dancing plaintiffs seek to engage, must be gauged against the test of *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). *Barnes v. Glen Theatre*, 501 U.S. at 566, 111 S.Ct. at 2460; *Hang On, Inc.*, 65 F.3d at 1248.[14] A content-neutral ordinance survives constitutional challenge where (1) it is within the constitutional power of the government, (2) it furthers an important or substantial governmental interest, (3) the asserted governmental interest is unrelated to the suppression of free expression, and (4) the incidental restrictions on alleged First Amendment freedoms is no greater than essential. *O'Brien*, 391 U.S. at 376–77, 88 S.Ct. at 1678–79.

 The fourth factor (no greater than essential) does not mean "least restrictive means available." Rather, the Supreme Court interprets this requirement to mean "narrowly tailored" to further the government's interest. *See Barnes*, 501 U.S. at 572, 111 S.Ct. at 2463. As stated by the majority in *Ward v. Rock Against Racism*, 491 U.S. at 799–800, 109 S.Ct. at 2758, "narrow tailoring is satisfied so long as the ... regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation," and any resulting burden on

---

**14.** Because the regulation at issue here seeks to regulate distances between nude dancer and bar patron, it could be argued that the time, place, and manner test of *Renton* is appropriate. *Compare Hang On, Inc.*, 65 F.3d at 1253, *BSA, Inc. v. King County*, 804 F.2d 1104, 1111 (9th Cir.1986), and *Colacurcio v. City of Kent*, 944 F.Supp. 1470, 1477 (W.D.Wash.1996) (applying *Renton* test in nude dance cases) *with DLS, Inc. v. City of Chattanooga*, 107 F.3d 403, 412 (6th Cir.1997), *Kev, Inc. v. Kitsap County*, 793 F.2d 1053, 1059 (9th Cir.1986), and *T–Marc, Inc. v. Pinellas County*, 804 F.Supp. 1500, 1506–07 (M.D.Fla.1992) (relying on and citing *O'Brien* favorably). Under *Renton*, a content-neutral time, place or manner regulation is constitution if (1) it is justified without reference to the content of the regulated speech, (2) it is narrowly tailored to serve a significant governmental interest, and (3) it leaves open ample alternative channels of communication. *Renton*, 475 U.S. at 47–48, 106 S.Ct. at 928–29.

The Supreme Court in *Barnes v. Glen Theatre*, held that government regulation of expressive conduct should be governed by the four-part test of *United States v. O'Brien*, 391 U.S. at 376, 88 S.Ct. at 1678. The Supreme Court noted, however, that the three-part time, place and manner test embodies much of the same standards as the *O'Brien* test. *Id.* Some courts even consider the test interchangeable. *Mitchell v. Comm'n on Adult Entertainment Est.*, 10 F.3d 123, 130–31 n. 7 (3rd Cir.1993) (*citing Movie & Video World, Inc. v. Bd. of County Comm'rs*, 723 F.Supp. 695, 698–701 (S.D.Fla.1989)). The Jefferson County ordinance seeks to regulate nude dancing, which the parties agree is expressive conduct, which is more similar to *Barnes* than *Renton*. Therefore, this matter is analyzed under the 4–part *O'Brien* test, with due consideration to the narrowly tailoring precepts of *Renton*.

speech is not substantially broader than necessary to achieve the governmental goal. *Id.* In distinguishing narrow tailoring from least intrusive means, the Supreme Court noted that a "regulation will not be invalid simply because a court concludes that the government's objective could be adequately served by some less-speech-restrictive alternative." *Id.*

Finally, while these factors must be evaluated individually, they must be put in context with the prescriptions of *Barnes v. Moore* wherein the Fifth Circuit stated that plaintiffs making facial challenge must also satisfy the "no set of circumstances" requirement of *United States v. Salerno*, 481 U.S. at 745, 107 S.Ct. at 2100.

### 1. The Ordinance is not Invalid under all circumstances

■ Plaintiffs fail to show a substantial likelihood of success under the above standards. Assuming arguendo that the SOBRs could be invalid as applied in some conceivable circumstance, plaintiffs fail altogether to show invalidity under all circumstances. Six feet is sufficiently close for a person to view and appreciate an artistic dance performance. Indeed, that distance is closer than distances at which artistic dance performances at theaters and concert halls generally are viewed. An eighteen-inch elevated platform only enhances visibility. Similarly, six feet is a normal conversational distance, and common experience permits a finding that one can smell perfume and body scents at a distance of six feet. In sum, one can fully see, hear and smell a nude erotic dancer at six feet. For almost any conceivable circumstance, a six-foot separation requirement for dancer and patron does not significantly diminish any protected expressive conduct. *See Kev, Inc.*, 793 F.2d at 1061 ("while the dancer's erotic message may be slightly less effective from ten feet, the ability to engage in the protected expression is not significantly impaired.").

### 2. The Ordinance Survives Under O'Brien

Even if *Salerno* and *Barnes v. Moore* did not require plaintiffs to establish "no set of circumstances" under which the regulations would be valid,[15] plaintiffs fail to show a substantial likelihood of success under the *O'Brien* four-part test.

Wisely, plaintiffs do not challenge the notion that protection of public health, safety, and welfare falls squarely within the constitutional police powers of local government. The SOBRS are clearly within Jefferson County's police powers. *See 1995 Venture I, Inc. v. Orange County*, 947 F.Supp. 271, 279 (E.D.Tex.1995) (Schell, C.J.); *see also, Young v. American Mini Theatres, Inc.*, 427 U.S. at 71, 96 S.Ct. at 2452–53. There is also no question that prevention of crime and disease are sufficient to satisfy the second prong of *O'Brien*. *See Barnes*, 501 U.S. at 582, 111 S.Ct. at 2468–69 (Souter, J. concurring); *Renton*, 475 U.S. at 48, 106 S.Ct. at 929; *Hang On, Inc.*, 65 F.3d at 1254. Finally, plaintiffs do not dispute that the targeted secondary effects are unrelated to suppression of protected speech. *Barnes, supra; Hang On, Inc., supra.* Thus, plaintiffs likelihood of success under an *O'Brien* analysis turns on whether the ordinance is no greater than essential to achieve the government's objective. As noted by Chief Justice Rehnquist, this test embodies substantially the same standards as a narrow tailoring analy-

---

15. The burden on a party making a facial challenge to a state law has been the subject of debate. *See Washington v. Glucksberg*, — U.S. —, 117 S.Ct. 2302, — L.Ed.2d — (1997) (O'Conner, J. concurring) (noting possible inconsistency in Supreme Court's standard used in facial challenges); *Janklow v. Planned Parenthood, Sioux Falls Clinic*, — U.S. —, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996) (dissenting from denial of certiorari) (Justices acknowledging confusion in facial challenge jurisprudence after *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) and *Planned Parent-* *hood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)); *Barnes v. Moore*, 970 F.2d at 14 n. 2 (Although court acknowledged differing standard applied by Supreme Court in *Casey*, Fifth Circuit concluded "Nevertheless we do not interpret *Casey* as having overruled, *sub silentio*, longstanding Supreme Court precedent governing challenges to the facial constitutionality to statutes."); *See also*, Michael C. Dorf, *Facial Challenges to State and Federal Statutes*, 46 Stan .L.Rev. 235, 236, 238 (1994).

sis. *Barnes v. Glen Theatre,* 501 U.S. at 566, 111 S.Ct. at 2460.

▪ This argument is without merit for several reasons. First, the reasons expressed in the preceding section are relevant. That the regulations permit effective artistic expression in almost every conceivable circumstance, is itself strong evidence of narrow tailoring. Second, to the extent that dancers and patrons desire closer communication or even actual physical contact, the ordinance does not prevent it provided the dancer dons minimal clothing. Counsel for defendants noted at oral argument, that communications between clothed dancer and patron do not yield the same secondary effects that emanate from the nude-dancer to patron conversation. Finally, by excluding from its prohibitions conversations not known to produce the targeted secondary effects, the ordinance cannot be considered substantially broader than necessary to reduce the noted secondary effects. *See Renton,* 475 U.S. at 52, 106 S.Ct. at 931 (finding Renton ordinance narrowly tailored because it affected only the "category of theaters shown to produce the unwanted secondary effects.").

Plaintiffs argue that dancer distance requirements will eliminate most tables in the club. Plaintiffs calculate that it will take a 20–foot distance from the center of each tabletop to the next center of the closest table to maintain the dancer distance requirements. Notwithstanding, the regulation itself commands only a six foot separation distance. If plaintiffs choose to give their nude artistic performances at patrons' tables, their calculations may be correct, but the ordinance itself does not compel such a configuration.

Similarly, plaintiffs argue that six feet is too far for dancer and patron to communicate, given the volume of music and noise from patrons. Again, the ordinance is not impugned. The volume of music and crowd noise is not a function of the ordinance, but a matter established by and within control of plaintiffs.

Ultimately, all of plaintiffs' arguments boil down to a complaint that the ordinance reduces their audience and adversely affects profits. To the extent they claim the ordinance denies them total access to their market, this contention is rejected. More likely, however, plaintiffs argue that the ordinance reduces their market from an economic perspective that it will no longer be profitable as before the ordinance. Whether or not this proves to be the case, it does not show lack of narrow tailoring. *See Renton,* 475 U.S. at 54, 106 S.Ct. at 932 (First Amendment requires only that ordinance refrain from denying reasonable opportunity to operate business and does not require invalidation of regulations which merely reduce plaintiffs' audience); *see also, DLS, Inc.,* 107 F.3d at 413 (First Amendment analysis generally is not concerned with economic impact and that, unless the ordinance were intended to destroy an entire market, an adverse effect will not violate the First Amendment); *Spokane Arcade, Inc. v. City of Spokane,* 75 F.3d 663, 665 (9th Cir.1996) ("it is irrelevant [for First Amendment purposes] whether a regulation will result in lost profits, higher overhead costs, or even prove commercially unfeasible for an adult business.").

### 3. Vagueness

In conclusory fashion, plaintiffs argue that the ordinance is facially void due to vagueness. The thrust of the argument is that law enforcement officers are not provided explicit guidance to enforce its provisions.

Plaintiffs point to no particular allegedly vague provision, unless it is the six foot distance requirement. Plaintiffs argue that the ordinance is silent as to how the distance separation determination is to be made. Further, they contend that a dancer scrupulously attempting to maintain a six foot distance from the patron who paid for a table dance might unwittingly violate it through no fault of her own due to intervening conduct of other patrons who position themselves closer than six feet after the dance begins.

▪ The silence of the ordinance as to how the distance separation determination is to be made does not give reason for constitutional concern. The ordinance requires that enterprises first obtain a permit. The permit will not issue unless the six-foot distance separation has been clearly marked in ad-

vance. Therefore, in practice the ordinance will operate in context of a bright line for law enforcement officers. As such, the ordinance does not suffer from an enforcement infirmity such as the floating buffer zone declared invalid in *Schenck v. Pro–Choice Network of Western New York*, 519 U.S. 357, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997).

If nude dancers and patrons accidentally, inadvertently, or due solely to other circumstances beyond their control, get closer than six feet, there could arise an instance of unconstitutional application of the ordinance. *See Washington v. Glucksberg,* —— U.S. at ——, 117 S.Ct. at 2304 (O'Conner, J. concurring) (noting that Washington's statute prohibiting physician-assisted suicide was not facially unconstitutional, but noting that some applications of the statute may be invalid). However, this potential outcome does not compel a conclusion that the statute is vague, or otherwise suggest facial unconstitutionality.

### E. Existing Jurisprudence Suggests No Likelihood of Success

In considering whether plaintiffs have a substantial likelihood of success, existing jurisprudence in similar cases also proves predictive. Several courts, including the Fifth Circuit Court of Appeals, this Court's controlling court, have upheld ordinances with buffer zone requirements over First Amendment challenges. *See Hang On, Inc.*, 65 F.3d 1248, 1253 (5th Cir.1995) (ordinance with "no touch" provision does not violate First Amendment); *DLS, Inc.*, 107 F.3d at 412 (6 foot buffer and 18 inch elevation held upheld); *Kev, Inc.*, 793 F.2d 1053, 1061 (9th Cir.1986) (10 foot buffer, 2 foot elevation); *BSA, Inc. v. King County*, 804 F.2d 1104, 1111 (9th Cir.1986) (6 foot buffer, 18 inch elevation); *Colacurcio v. City of Kent*, 944 F.Supp. 1470, 1477 (W.D.Wash.1996) (10 foot buffer, 24 inch elevation); *T–Marc, Inc. v. Pinellas County*, 804 F.Supp. 1500 (M.D.Fla. 1992) (3 foot buffer).

This conclusion is strengthened by the *Barnes v. Glen Theatre* dissent. There, Justice White, while arguing for the "most exacting scrutiny" rather than the lesser scrutiny of *O'Brien*, recognized that local governments could enact buffer-zone regulations in compliance with the First Amendment.

If the State is generally concerned with prostitution and associated evils, as Justice Souter seems to think, ..., it can adopt restrictions that do not interfere with the expressiveness of nonobscene nude dancing performances if it is genuinely concerned with prostitution and associated evils. *For instance, the state could perhaps require that, while performing, nude performers remain at all times a certain distance from spectators:*

*See Barnes v. Glen Theatre*, 501 U.S. at 594, 111 S.Ct. at 2475 (White, Marshall, Blackmun, & Stevens, JJ., dissenting) (emphasis added).

For the reasons stated above, plaintiffs have not shown a substantial likelihood of success on their motion to enjoin enforcement of the SOBRs if presented at a trial on the merits. Since they fail to establish the first element required under Federal Rule 65, their motion seeking the extraordinary relief of a preliminary injunction should be denied.

### F. Irreparable Injury

 Because plaintiffs fail to show a substantial likelihood of success in a facial challenge to the dancer distance separation requirements of Jefferson County's SOBRs, the court need not consider the other prerequisites for obtaining a preliminary injunction. *See Kern River Gas, supra.* However, an alternative ground for denying the motion is apparent because a preliminary injunction should not be granted if the plaintiff can be compensated for any resulting injury if the injunction is not granted. If a party's injuries can be fully compensated by judicial remedy, *DSC Communications Corp. v. Next Level Comm.*, 107 F.3d 322, 328 (5th Cir. 1997), due to the extreme nature of injunctive relief, *Black Fire Fighters Ass'n of Dallas v. City of Dallas*, 905 F.2d 63, 65 (5th Cir.1990), an injunction should not be issued, *White v. Carlucci*, 862 F.2d 1209, 1213 (5th Cir.1989).

While loss of First Amendment rights, even for minimals periods, is irreparable injury, *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976), it is doubtful that plaintiffs will suffer any deprivation of First Amendment rights. Moreover, as noted earlier plaintiffs' arguments reveal the true substance of their battle; economic success of the sexually oriented businesses of unincorporated Jefferson County.

According to plaintiffs, any potential losses directly relate to the dancers' ability to generate tips and Baby Dolls' and Robinson's ability to increase revenues at the cabaret. Nowhere in the record, consisting of plaintiffs' complaint, affidavits from each plaintiff, written briefs, and the oral arguments of counsel at two separate hearings, do plaintiffs assert any other reason for their challenge than potential financial loss. For example, paragraph 28 of plaintiffs' Amended Complaint states: "[p]laintiffs have or will suffer personal and property loss as well as economic detriment not compensated by the provisions of the SOBRs, to wit: (a) loss of customers, (b) loss of economic opportunity, (c) loss of profits, (d) loss of employment, and (e) cost of litigation." (Am.Compl. at 14). Plaintiffs assert no other losses. Indeed, the Court has difficulty on the pleadings in this case, imagining a basis other than economic upon which plaintiffs claim injury. Because any loss in business or tips is easily measurable and compensable by recovery of damages, and plaintiffs have failed to assert any non-compensable injuries, the preliminary injunction should be denied due to plaintiffs' failure to establish irreparable injury.

**16.** When subsection 17 applies and prohibits all possession and consumption of alcohol, subsections 15 and 16 have no practical effect. These provisions would come into play if there were a Texas Alcoholic Beverage Commission permit or license that authorized person to possess or consume alcohol on the premises. Since that is not the case with Baby Dolls # 5, any alleged constitutional infirmities in subsections 15 and 16 are of academic interest only, and need not be addressed for present purposes.

**17.** At final oral argument on plaintiffs' motion, conducted November 14, 1997, plaintiffs only argued that the alcohol prohibition requirements of the SOBRs violated the federal guarantee of Equal Protection. Shortly before this report was

## VII. ALCOHOL PROHIBITION REQUIREMENTS

Plaintiffs also challenge sections XXII(a)(15)–(17) dealing with possession and consumption of alcohol on premises of enterprises subject to regulation under SOBRs. Subsection 17 prohibits all persons from possessing or consuming alcohol on such premises unless authorized by a permit or license issued pursuant to the Texas Alcohol and Beverage Code. Subsections 15 and 16 apply to employees and performers, respectively, and require that they not consume alcohol on the premises while on duty or for twelve hours before or after work.

Baby Dolls # 5 does not possess a permit or license issued under the Texas Alcoholic Beverage Code. At oral argument, defense counsel asserted without contradiction that Baby Dolls # 5 will be ineligible for a Texas Alcoholic Beverage Commission permit or license so long as it features nude entertainment. *See e.g.,* TEX. ALCO. BEV.CODE ANN. §§ 11.46, 104.01(2) (Vernon 1995). Thus, subsection 17 of Jefferson County's ordinance is the operable provision of the SOBRs as to Baby Dolls # 5. As mentioned in the preceding paragraph, subsection 17 prescribes an absolute prohibition of possession or consumption of alcohol by anyone, patron, employee or dancer on the premise of a Class I enterprise.[16]

Plaintiffs assert the County's regulation of alcohol consumption and possession is violative of the Equal Protection Clause of the United States Constitution.[17]

### A. Standards for Equal Protection Analysis

When a party seeks relief under the Equal Protection Clause [18] and does not

due, plaintiffs filed a memorandum requesting that this court exercise its supplemental jurisdiction and decide a pure issue of Texas state law. That issue is whether Jefferson County's attempt to regulate alcohol possession and consumption in its SOBRs is invalid because alcohol regulation is completely preempted by the State.

Because exercise of supplemental jurisdiction is discretionary, and the Court has not yet determined whether to exercise it in this case, plaintiffs' state law issue is not addressed in this report.

**18.** The Fourteenth Amendment provides that "No state shall … deny any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

allege violation of a fundamental right or creation of a suspect classification, the law is properly tested under the rational basis test. *F.C.C. v. Beach Comm., Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993). Under the rational basis test, governmental regulation is to be upheld if there is any reasonable set of facts that could conceivably provide a rational basis for the classification. *Id.*; *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir.1997). The government need not even articulate its reasons for enacting an ordinance, *Hodel v. Indiana*, 452 U.S. 314, 331–32, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981), rather "a legislative choice may be based on rational speculation unsupported by evidence." *Id. quoting, Vance v. Bradley*, 440 U.S. 93, 111, 99 S.Ct. 939, 949–50, 59 L.Ed.2d 171 (1979). Under the rationality test, a classification has a strong presumption of validity. Those attacking the rationality of a legislative classification have the heavy burden "to negative every conceivable basis which might support it." *F.C.C.*, 508 U.S. at 314, 113 S.Ct. at 2101 (citations omitted).

▓▓▓▓▓ Although legislative enactments are struck down rarely, they are invalidated when the stated end bears no relationship to the chosen means. *Allegheny Pitts. Coal Co. v. County Comm'n*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989); *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Likewise if the stated governmental objective is not a legitimate state end, the statute must be struck. *Hooper v. Bernalillo County Assessor*, 472 U.S. 612, 622–23, 105 S.Ct. 2862, 2868, 86 L.Ed.2d 487 (1985); *Zobel v. Williams*, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982) (striking down state statutes drawing distinction between newcomers and long term residents). In sum, where a regulation is capricious or arbitrary, or rests on an unreasonable consideration or policy, it is a denial of equal protection and must be struck. *See City of Dallas v. Stanglin*, 490 U.S. 19, 27, 109 S.Ct. 1591, 1596, 104 L.Ed.2d 18 (1989).

## B. No Fundamental Right or Suspect Classification Involved

▓▓▓▓▓ The Jefferson County SOBRs does not implicate a fundamental right or create a suspect classification. If consuming alcohol at one's own discretion is a right protected by the Fourteenth Amendment, plaintiffs fail to cite authority for the proposition. In any event, the right to drink alcohol, if any such right even exists, is not fundamental in constitutional parlance.

To the extent any "classification" occurs, the ordinance regulates all patrons, employees and entertainers of sexually oriented businesses operating in the unincorporated areas of Jefferson County. Such a classification does not create a category of persons recognized as a suspect class embodied under existing Fourteenth Amendment jurisprudence. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269, 113 S.Ct. 753, 759, 122 L.Ed.2d 34 (1993) (women seeking an abortion were not a suspect class); *New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (pushcart vendors not suspect class warranting strict scrutiny); *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955) (opticians not suspect class).

Plaintiffs, therefore, must establish that no set of facts exists to establish a rational relationship between the ordinance's classification and a legitimate governmental interest. Further, having already concluded in section VI(D)(2) above that the County has a legitimate interest in remedying the undesirable secondary effects related to sexually oriented businesses, this Report now considers whether there exists a rational relationship between the interest and the asserted classification.

## C. Rational Relationship Between Alcohol Possession and Consumption and The Stated Governmental Goals

▓▓▓▓▓ Baby Dolls # 5 sells fantasy through erotic message and dance. Dancers motivate patrons toward sexual ecstasy in pursuit of a

full erotic experience. Patrons are led to near climax by dancers espousing an erotic message. The effects of alcohol could greatly increase a patron's urge to complete the sexual fantasy. One can easily perceive of occasions when, patrons and dancers in an alcohol induced state, are more likely to desire continuation of their erotic experience and, as a result of alcohol, will be less likely to restrain themselves. It follows that Jefferson County could reasonably conclude that consumption of alcohol under such circumstances might exacerbate violent dancer-patron exchanges and prostitution. Hence, the County's ends of protecting its citizenry from these ill-fated secondary effects are rationally related to limiting consumption of alcohol on premises of sexually oriented businesses.

This conclusion is further supported by section 104.01(2) of the Texas Alcohol and Beverage Code. That provision makes nude exotic dancing on premise licensed for sale of alcoholic beverages a criminal offense. *See also*, TEX. ALCO. BEV.CODE ANN. § 1.05. There is no reason to think that Jefferson County would not have a rational basis for an ordinance with the same objective.

## VIII. RECOMMENDATION

For the reasons set forth above, plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction should be denied.

## IX. OBJECTIONS

Objections must be (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(b), 72(b).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir.1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto.*

*Ass'n*, 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).

SIGNED this 26th day of November, 1997.