IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 94-10959

HANG ON, INC., d/b/a Hardbody's
of Arlington,

Plaintiff-Appellant,

versus

CITY OF ARLINGTON,

Defendant-Appellee.

Appeals from the United States District Court
for the Northern District of Texas

( September 20, 1995 )

Before REYNALDO G. GARZA, KING, AND HIGGINBOTHAM, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Hang On, Inc. appeals from the judgment of the United States District Court dismissing Hang On's federal constitutional, state constitutional, and state law challenges to the City of Arlington's Adult Entertainment Ordinance No. 92-117.

I.

After amassing studies describing noxious secondary effects of adult entertainment establishments, the Arlington city council passed Ordinance No. 92-117 on November 17, 1992. The Ordinance's stated purpose was "to regulate Adult Entertainment Establishments to promote the health, safety, morals and general welfare of the citizens of the City." The Ordinance expressly disclaimed intent

to "restrict or deny access by adults to sexually oriented materials protected by the First Amendment or to deny access by the distributors and exhibitors of sexually oriented entertainment to their intended market."

The Ordinance created a comprehensive regulatory scheme for adult entertainment establishments in the City of Arlington. Among its provisions, the Ordinance provided:

Section 5.01  Additional Regulations for Adult Cabaret

A.    An employee of an adult cabaret, while appearing in a state of nudity, commits an offense if he touches a customer or the clothing of a customer.

B.    A customer at an adult cabaret commits an offense if he touches an employee appearing in a state of nudity or clothing of the employee.

The Ordinance defined a "state of nudity" as a state of dress that fails to opaquely cover a human buttock, anus, male genitals, female genitals, or female breast.

On December 17, 1993, Hang On, which operates a topless bar in Arlington, filed suit against Arlington in Texas state court pursuant to 42 U.S.C. § 1983, alleging that the Ordinance violates the First, Fourth, and Fourteenth Amendments to the United States Constitution. In particular, Hang On charged that the Ordinance's "no touch" provision is unconstitutionally overbroad because it criminalizes casual or inadvertent touching and unconstitutionally vague because it does not define "touches". In addition, Hang On argued that Arlington's enforcement of the Ordinance had been conducted in a harassing and discriminatory manner. Finally, Hang On alleged that the Ordinance's exclusion of male breasts from the

definition of nudity violates the Equal Rights Amendment of the Texas Constitution, Tex. Const. art. I, § 3A, and that the Ordinance violates the Texas Alcoholic Beverage Code by discriminating against business with alcoholic beverage licenses. Tex. Alco. Bev. Code Ann. § 109.57.

Arlington removed the case to the United States District Court for the Northern District of Texas. On September 21, 1994, the district court granted summary judgment for Arlington on all of Hang On's claims and awarded costs and attorney's fees to Arlington. Hang On has timely appealed, and we now affirm the judgment of the district court.

II.

We first examine whether Hang On has standing to bring these claims. "The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines." United States v. Hays, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995) (quoting FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990) (citations omitted)).

A party seeking to enlist the court's jurisdiction "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Hang On asserts that the intrusive searches by the Arlington police have violated its own right to be free from unreasonable searches. Similarly, Hang On asserts its own rights

3

when it claims that Arlington's ordinance violates the Texas Alcoholic Beverage Code. Its standing to assert these two claims is plain.

Hang On's claim that the "no touch" provision violates the First Amendment implicates the general requirement that a litigant assert its own rights. Hang On does not claim any denial of its own First Amendment rights. The specific prohibition of the ordinance at issue in this case is part of a general regulation of adult cabarets, including Hang On, but the "no touch" provision regulates dancers and customers, not the bar itself.

Assuming that the case or controversy requirements of Article III are met, the Constitution does not universally forbid a party from asserting the rights of others. Rather, the general rule prohibiting such surrogate claims is prudential. Whitmore v. Arkansas, 495 U.S. 149, 161 n.2, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). Accordingly, we examine exceptions to this general rule. One exception allows a litigant to assert the rights of individuals with whom she has a close relationship. See Pierce v. Society of the Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (holding that organization's interest in preserving its own business permitted it to assert rights of patrons). The history of this exception is checkered. Compare McGowan v. Maryland, 366 U.S. 420, 429-30, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961) with Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) and Secretary of State of Md. v. Joseph H. Munson Co., Inc., 467 U.S. 947, 954-58, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). Ordinarily, a

4

business like Hang On may properly assert its employees' or customers' First Amendment rights where the violation of those rights adversely affects the financial interests or patronage of the business. That Hang On's employees and customers could encounter practical difficulties in asserting their own rights may place this case within a distinct exception; at minimum, this fact reinforces the close relationship prerequisite to surrogate standing here. See Spiegel v. City of Houston, 636 F.2d 997, 1001 (5th Cir. Unit A Feb. 1981); Gajon Bar & Grill, Inc. v. Kelly, 508 F.2d 1317, 1322 (2d Cir. 1974) (upholding standing of corporation to assert First Amendment rights of its employees and patrons); Black Jack Distributors, Inc. v. Beame, 433 F.Supp. 1297, 1303 (S.D.N.Y. 1977) (upholding vendor's standing to assert First Amendment right of patrons' to purchase sexually explicit material). We are persuaded that this exception is applicable and that Hang On has standing to challenge the "no touch" provision as violative of the First Amendment rights of its employees and customers.

We are also persuaded that Hang On may assert its employees' rights under the Texas Equal Rights Amendment. Tex. Const. art. I, § 3A. We are cognizant of our holding in MD II Entertainment, Inc. v. City of Dallas, Tex., 28 F.3d 492, 497 (5th Cir. 1994), that a dance hall did not have standing to raise its employees' rights under the Texas Equal Rights Amendment to challenge a municipal ordinance that excluded male breasts from its definition of "semi-nudity" and "simulated nudity". In MD II, we distinguished SDJ,

5

Inc. v. City of Houston, 837 F.2d 1268 (5th Cir.), reh'g denied, 841 F.2d 107 (5th Cir. 1988), cert. denied, 489 U.S. 1052, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989), on the ground that SDJ did not purport to hold that club owners "must be allowed to raise their dancer's rights." MD II, 28 F.3d at 498 (emphasis added). Prudential considerations such as the failure of MD II to explain the absence of its dancers from the litigation led us in MD II to conclude that "[g]ranting standing to MD II may, however, result in the unnecessary litigation of a question those parties most immediately affected may not dispute." Id. at 497.

Here, unlike in MD II, there is no suggestion that Hang On's dancers do not wish this litigation to go forward, and there is no indication that Hang On's interest in this litigation diverges from that of its dancers. See 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3531.9, at 579 (arguing that employers may assert rights of their employees where there is "a congruence rather than conflict of interests"); see also Craig v. Boren, 429 U.S. at 195 (noting "vendors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function"). Significantly, Arlington cannot dispute that its ordinance has a direct financial impact on Hang On, as well as Hang On's employees. Injury is essential to meeting the threshold case or controversy requirement of Article III, and injury of this type is usually a

6

component of a relationship sufficiently "close" to meet prudential standing requirements.

By contrast, the causal link between the injury to the club owners in MD II and the Dallas ordinance's exclusion of male breasts from its definition of semi-nudity was attenuated at best. It was difficult to see any injury to MD II from the underinclusive character of the challenged regulations. The asserted defect was a failure to regulate the exposure of male breasts. We are persuaded that Hang On has standing to assert its dancers' First Amendment and state constitutional rights.

There is much to be said for shifting the analysis from judicial justifications for asserting the rights of others to a direct inquiry into the rights of the plaintiffs in those relationships, but we do not reach those questions today. See Henry P. Monaghan, "Third Party Standing," 84 Colum. L. Rev. 277, 299 (1984).

### III.

Hang On urges that summary judgment was inappropriate because facial constitutional challenges "require a review of the application of a statute to the conduct of the party before the court" and this review "is a fact question for the trier of fact to evaluate at time of trial." We disagree.

We note that claims that an ordinance is facially invalid are better candidates for summary disposition than claims that an ordinance was unconstitutionally applied. Claims of facial invalidity do not depend upon the development of a "complex and

7

voluminous" factual record.  <u>Keystone Bituminous Coal Ass'n v. DeBenedictis</u>, 480 U.S. 470, 493, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987).  The essence of a facial challenge usually is that the statute <u>on its face</u> -- without regard to how it affects the particular litigants -- violates the law.  <u>See</u>, <u>e.g.</u>, <u>Johnson v. American Credit Co. of Georgia</u>, 581 F.2d 526, 533 (5th Cir. 1978).

Likewise, Hang On's argument that further discovery and trial are necessary to permit it to develop its claims of facial invalidity misses the mark.  Claims of statutory overbreadth like that alleged by Hang On do not present fact disputes regarding the effects of an allegedly overbroad statute on a plaintiff.  <u>See Village of Schaumburg v. Citizens for a Better Environment</u>, 444 U.S. 620, 634, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) (affirming summary judgment on overbreadth challenge while noting that such a challenge was "a question of law that involved no dispute about the characteristics of [the plaintiff]").  Hang On does not tell us how further time and proceedings are necessary to the adjudication of its facial challenges.

A.

Hang On argues that the "no touch" provision is unconstitutionally overbroad in violation of the First Amendment. <u>Barnes v. Glen Theatre, Inc.</u>, 501 U.S. 560, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504 (1991), held that nude dancing <u>itself</u> "is expressive conduct within the outer perimeters of the First Amendment."  It does not inevitably follow, however, that touching between a nude performer and a customer is protected expression.

8

We recognize that the theater of expressive dancing may be limited only by the art and creativity of the performers. "It is possible to find some kernel of expression in almost every activity a person undertakes . . . but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." City of Dallas v. Stanglin, 490 U.S. 19, 25, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989). This said, intentional contact between a nude dancer and a bar patron is conduct beyond the expressive scope of the dancing itself. The conduct at that point has overwhelmed any expressive strains it may contain. That the physical contact occurs while in the course of protected activity does not bring it within the scope of the First Amendment. Cf. Barnes, 111 S.Ct. at 2466 (Scalia, J., concurring in the judgment) (noting that the Court has "never invalidated the application of a general law simply because the conduct that it reached was being engaged in for expressive purposes").

Similarly, patrons have no First Amendment right to touch a nude dancer. Cf. Geaneas v. Willets, 911 F.2d 579, 586 (11th Cir. 1990) (holding that bar patrons have no First Amendment right to wear revealing clothing), cert. denied, 499 U.S. 955, 111 S.Ct. 1431, 113 L.Ed.2d 484 (1991); Dodger's Bar & Grill, Inc. v. Johnson Cty. Bd. of Comm'rs, 32 F.3d 1436, 1443 (10th Cir. 1994) (same).

Hang On's argument that the "no touch" provision is overbroad because it applies to all employees in a state of nudity, not just dancers, is without merit. It is true that dancers possess First Amendment rights, and we have discussed their limits. Non-

performing nude employees, however, cannot claim First Amendment protection solely by virtue of their nudity. Rather, "nudity is protected as speech only when combined with some mode of expression which itself is entitled to first amendment protection." South Florida Free Beaches, Inc. v. City of Miami, Fla., 734 F.2d 608, 610 (11th Cir. 1984) (alteration and internal quotes omitted). Since employees not engaged in expressive conduct such as dancing have no First Amendment right to appear in the nude, applying the "no touch" provision to non-performing nude employees does not make it overbroad.

Even if intentional contact between a topless dancer and a customer is not inevitably and always beyond the umbrella of the First Amendment, Arlington's "no touch" provision is not facially overbroad. The First Amendment "does not guarantee the right to [engage in protected expression] at all times and places or in any manner that may be desired." Heffron v. International Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 647, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981). The Court held in Barnes that content-neutral regulations of time, place, or manner are permissible where the regulations satisfy the four-part test announced in United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). The regulation is valid "if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than

10

is essential to the furtherance of that interest." O'Brien, 391 U.S. at 377.

Hang On does not dispute nor is there any doubt that Arlington possessed the authority to enact the "no touch" provision as part of its adult entertainment ordinance. See MJR's Fare of Dallas, Inc. v. City of Dallas, 792 S.W.2d 569, 576 (Tex. App.--Dallas 1990, writ denied) (holding municipality's police power encompassed authority to enact ordinance regulating sexually oriented businesses). Similarly, there is no dispute that the "no touch" provision furthers a substantial governmental interest and is unrelated to the suppression of free expression. Although the Arlington city council did not make specific legislative findings regarding the "no touch" provision, it now suggests that the Ordinance serves to prevent prostitution, drug dealing and assault. These justifications were offered for a similar "no touch" provision upheld in Kev, Inc. v. Kitsap County, 793 F.2d 1053 (9th Cir. 1986), and Hang On does not suggest that any alternative, content-oriented interest motivated Arlington. To the contrary, the Ordinance disclaims any intent to infringe upon protected expression.

The essence of Hang On's overbreadth claim appears to be that Arlington's "no touch" provision is unconstitutionally overbroad because the ordinance criminalizes accidental or inadvertent touching and, therefore, burdens more protected expression than is necessary to further the city's interest in preventing prostitution, drug dealing, and assault. This argument rests on a

11

premise that we reject, namely that Arlington's "no touch" provision criminalizes any contact between nude employees and customers. The State of Texas has provided that "[i]f the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element." Tex. Penal Code Ann. § 6.02(b). Texas law further provides that "[i]f the definition of an offense does not prescribe a culpable mental state but one is nevertheless required [under the foregoing provision], intent, knowledge, or recklessness suffices to establish criminal responsibility." Tex. Penal Code Ann. § 6.02(c). The Arlington ordinance does not specify a requisite mental state, but the Ordinance does not dispense with any mental element. Under Texas law, the Ordinance requires a culpable mental state and, therefore, does not criminalize inadvertent or negligent touching. See Pollard v. State, 687 S.W.2d 373, 374 (Tex. App.--Dallas 1985, writ ref'd) (applying § 6.02 to city ordinance that did not specify a required mental state). No evidence suggests that the City of Arlington has sought to enforce the Ordinance against persons unintentionally touching one another.

12

Given the limiting construction imposed by Texas law,[1] we conclude that Arlington's "no touch" provision does not burden more protected expression than is essential to further substantial governmental interests.[2] We perceive no material difference between Arlington's "no touch" provision and the "no touch" provision upheld against a similar attack in Kev, Inc. v. Kitsap County, 793 F.2d 1053 (9th Cir. 1986). In Kitsap County, the Ninth Circuit upheld an ordinance that, in addition to prohibiting topless dancers and customers from fondling or caressing one another, required dancers to remain at least ten feet from the customers and prohibited patrons from tipping dancers. Referring to the "no touch" provision, the court concluded that "because of the County's legitimate and substantial interest in preventing the demonstrated likelihood of prostitution occurring in erotic dance studios, the County may prevent dancers and patrons from sexually

---

[1]    We express no opinion on the constitutionality of an ordinance prohibiting all touching between patrons and nude dancers. We do not offer narrowing interpretations of a state regulation. That is the task of the state courts. See Gooding v. Wilson, 405 U.S. 518, 520, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); United States v. Thirty-seven Photographs, 402 U.S. 363, 369, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971). We parse no words or otherwise engage in the interpretive enterprise. Rather, we simply apply all the relevant statutes. See also City of Houston, Tex. v. Hill, 482 U.S. 451, 462 n.10, 468, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (holding, without prior state court decisions for guidance, that provision of state criminal code preempts parts of city ordinance).

[2]    In Ward v. Rock Against Racism, 491 U.S. 781, 798-99, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989), the Court noted that a time, place, or manner restriction "need not be the least restrictive or least intrusive means" of serving the government's interest. Rather, the restriction is no greater than essential where the governmental interest "would be achieved less effectively absent the regulation." Id. at 799 (internal quotation marks omitted).

13

touching each other while the dancers are acting in the scope of their employment."  Id. at 1061 n.11.  Arlington's "no touch" provision does not criminalize more conduct than Kitsap County's. We are persuaded that Arlington's ordinance burdens no more protected expression than is essential to further Arlington's interest in preventing prostitution, drug dealing, and assault.

B.

Hang On's contention that Arlington's "no touch" provision is void for vagueness is without merit.  Hang On has not specified which terms in Arlington's ordinance are vague.  Hang On appears to claim that Arlington's ordinance is unconstitutionally vague because it fails to define "dancer", which the Kitsap County ordinance did define.  The significance of this allegation eludes us, particularly given that Arlington's ordinance criminalizes touching between a customer and an "employee", which includes dancers.

C.

Hang On argues that Arlington's decision to criminalize touching in adult cabarets but not in other adult entertainment establishments renders the ordinance unconstitutional on its face. Hang On does not specify whether this feature of the ordinance violates state or federal law.

To the extent that Hang On relies upon equal protection rights guaranteed by the state constitution, its argument is without merit.  The Texas Court of Appeals in 2300, Inc. v. City of Arlington, Tex., 888 S.W.2d 123, 129 (Tex. App.--Fort Worth 1994,

14

no writ), held that Arlington's decision to apply the "no touch" provision only to adult cabarets did not violate the cabarets' equal protection rights guaranteed by the state constitution. Tex. Const. art. I, § 3.

The district court did not address the merits of this argument because Hang On failed to include it in its complaint and raised this claim for the first time in its response to Arlington's motion for summary judgment. Although Hang On renews this allegation on appeal, we agree with the district court that, because Hang On did not raise the state constitutional claim in its complaint nor provide any authority for its allegation, we should not address its merits.

To the extent that Hang On asserts a violation of the Fourteenth Amendment, it has failed to demonstrate that Arlington's decision to apply the "no touch" provision only to adult cabarets is an invidious classification or burdens a fundamental right. Here, Arlington could rationally conclude that adult cabarets, which typically serve alcohol and attract large crowds, are a more likely venue than nude modeling studios for the evils of prostitution, drug dealing, and sexual violence that the "no touch" provision seeks to eliminate.

Nor does the Equal Protection Clause require Arlington to prohibit touching between nude employees and customers in every field in which it occurs. Cf. SDJ, Inc. v. City of Houston, 837 F.2d 1268, 1279 (5th Cir.) (rejecting similar underinclusive argument), reh'g denied, 841 F.2d 107 (5th Cir. 1988), cert.

15

*denied*, 489 U.S. 1052, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989). Rather, "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

## IV.

### A.

Hang On contends that excluding male breasts from the ordinance's definition of nudity violates the Equal Rights Amendment of the Texas Constitution.[3] Under Texas law, we must first determine whether the ordinance discriminates against one sex "simply on the basis of gender." *Williams v. City of Fort Worth*, 782 S.W.2d 290, 296 (Tex. App.--Fort Worth 1989, writ denied).

In *MJR's Fare of Dallas v. City of Dallas*, 792 S.W.2d 569, 575 (Tex. App.--Dallas 1990, writ denied), the Texas Court of Appeals held that the exclusion of male breasts from the definition of nudity did not constitute discrimination against women "solely on the basis of gender." The court noted that the city introduced evidence showing that physiological and sexual distinctions exist between male and female breasts; that female breasts differ internally and externally from male breasts; and that the female breast, unlike the male breast, is a mammary gland. *Id.* The court concluded that the definition of nudity excluded male breasts on grounds other than simply gender.

---

[3] "Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin." Tex. Const. art. I, § 3A.

16

Similarly, Arlington presented evidence to the district court showing that the Arlington city council considered the physiological and sexual distinctions between the female and male breasts. In sworn testimony presented to the city council, Dr. J. Douglas Crowder concluded that distinguishing between male and female breasts in defining nudity is "certainly consistent with what we know medically about human sexual response." Moreover, the preamble of the Ordinance itself proclaimed that the city council reviewed "[c]onvincing documented evidence regarding the physiological and sexual distinctions between male and female breasts." By contrast, Hang On presented no evidence to the district court that Arlington's ordinance discriminated against women solely on the basis of gender.

Hang On relies heavily on the Texas Court of Appeals' holding in Williams that the exclusion of male breasts from the definition of nudity discriminated against women solely on the basis of gender. In Williams the court of appeals noted that the plaintiff successfully carried its burden of proof to show that the definition discriminated against women solely on account of gender because the city offered "no evidence about the differences in physical characteristics or how such differences relate to the ordinance's goal of preventing secondary neighborhood effects." 782 S.W.2d at 296 n.2. Hang On's failure to offer any evidence regarding Arlington's decision to exclude male breasts from the definition of nudity, coupled with Arlington's introduction of

17

evidence showing that Arlington's decision was not motivated by gender animus, distinguishes this case from Williams.

We cannot let pass without comment the energy expended in the "trial" of such issues. Courts need no evidence to prove self-evident truths about the human condition -- such as water is wet. Nor should they tarry long with such foolishness and, in the process, trivialize constitutional values intrinsic to our society. The district court correctly concluded that Arlington's definition of nudity did not discriminate against women solely on the basis of gender.

B.

Hang On also claims that the application of the "no touch" provision to adult cabarets violates § 109.57 of the Texas Alcoholic Beverage Code because Arlington's "no touch" provision applies to adult cabarets, which normally have alcoholic beverage licenses, but does not apply to nude modeling studios, which do not have such licenses. Holding that Hang On never presented evidence to substantiate its claim, the district court granted summary judgment to Arlington on this issue. We agree that Arlington is entitled to summary judgment, not because Hang On failed to produce any evidence indicating a genuine issue of material fact, but because Hang On's legal theory is without merit.

In Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas, 852 S.W.2d 489, 492 (Tex. 1993), the Texas Supreme Court held that § 109.57 preempted a municipal ordinance prohibiting the sale of alcoholic beverages within 300 feet of a residential area.

18

The court was quick to point out that municipalities retained the power to regulate businesses with alcoholic beverage licenses as long as those regulations did not discriminate against such businesses. The court explained:

> [A]n ordinance requiring all businesses with the same kind of premises to have a fire extinguisher on their premises would not violate section 109.57(a). On the other hand, an ordinance requiring an alcohol related business to have two fire extinguishers and only requiring a non-alcohol related business with the same kind of premises to have one fire extinguisher would violate section 109.57(a).

Id. at 492 n.5.

Arlington's "no touch" provision does not run afoul of § 109.57(a) because, unlike the fire extinguisher example from Dallas Merchants, its coverage of the set of businesses with alcoholic beverage licenses is both underinclusive and overinclusive. Application of Arlington's "no touch" provision to adult cabarets is underinclusive in that there are many businesses with alcoholic beverage licenses that do not qualify as adult cabarets and, therefore, are not subject to the "no touch" provision. The scope of Arlington's "no touch" regulation is also overinclusive in that adult cabarets not required to have alcoholic beverage licenses are still subject to Arlington's "no touch" provision. This loose fit between the regulatory scope of the "no touch" provision and businesses serving alcohol leads us to conclude that Arlington's ordinance does not impose stricter standards on alcohol-related businesses than it does on non-alcohol related businesses. Indeed, this loose fit is a far cry from the Dallas ordinance invalidated in Dallas Merchants, which regulated

19

businesses <u>if and only if</u> they were in the business of selling alcohol. Arlington's decision to limit the application of the "no touch" provision to adult cabarets does not violate § 109.57(a) of the Texas Alcoholic Beverage Code.[4]

V.

Finally, Hang On argues that Arlington's enforcement of the Ordinance has been conducted in a harassing and offensive manner in violation of its Fourth Amendment rights. The district court rejected Hang On's claim, holding that Hang On presented no evidence that it was the policy of Arlington to enforce the Ordinance in a manner that violates Hang On's constitutional rights. We review the district court's grant of summary judgment <u>de novo</u>, viewing the evidence in the light most favorable to Hang On. <u>Richardson v. Oldham</u>, 12 F.3d 1373, 1376 (5th Cir. 1994).

Hang On does not claim that it is the official policy of Arlington to harass adult cabarets and their patrons. Indeed, Arlington's ordinance expresses the exact opposite policy. "[I]t is not the intent nor effect of this Chapter to restrict or deny access by adults to sexually oriented materials protected by the First Amendment or to deny access by the distributors and exhibitors of sexually oriented entertainment to their intended market." Instead, Hang On claims that Arlington's policy may be

---

[4]    Arlington's reliance on § 109.57(d) is unavailing since that provision only permits a municipality to regulate the <u>location</u> of a sexually oriented business. It does not purport to permit the regulation of the <u>manner</u> in which a sexually oriented business operates.

20

inferred from the police officers' repeated visits on a nightly basis.

Although the district court found that Hang On had presented evidence of a pattern or practice by Arlington of conducting the allegedly unconstitutional searches, the court correctly concluded that Hang On failed to present any evidence that policy-making officials in Arlington had any knowledge, actual or constructive, of the police officers actions during the investigative searches of Hang On's cabaret. The only evidence presented by Hang On to rebut Arlington's motion for summary judgment was the affidavit of Andy Anderson, alleging that "defendant's agents" have entered its business "on multiple occasions" and that the officers' manners and actions became "more disruptive and abusive".[5] Mr. Anderson's affidavit noticeably omits any allegation that the principal of the "defendant's agents," i.e., the City of Arlington, had any knowledge of the action and behavior of its "agents". We find no record evidence that Arlington knew of and was deliberately indifferent to its police officers' conduct.

Hang On responds that the district court's grant of summary judgment to Arlington dismissing Hang On's harassment claim was erroneously based on the heightened pleading requirement invalidated in Leatherman v. Tarrant County Narcotics Unit, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Hang On fails to grasp the

---

[5] The district court did not rule on Arlington's numerous objections to the Anderson affidavit. On appeal, Arlington renews its objections. Given our disposition of the matter, we do not reach the issue whether the district court abused its discretion in considering the Anderson affidavit.

difference between a motion to dismiss and a motion for summary judgment.

VI.

We agree with the district court that Hang On's facial challenges to Arlington's "no touch" provision are without merit and that there was no genuine issue of material fact. We AFFIRM the judgment of the district court, including its award of costs and attorney's fees to Arlington.