# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 25, 2026

Lyle W. Cayce
Clerk

———————

No. 23-20480

———————

The Woodlands Pride, Incorporated; Abilene Pride Alliance; Extragrams, L.L.C.; 360 Queen Entertainment, L.L.C.; Brigitte Bandit,

*Plaintiffs—Appellees*,

*versus*

Warren Kenneth Paxton, *In an official capacity as Attorney General of Texas*; Brett Ligon, *In an official capacity as District Attorney of Montgomery County*; Montgomery County, Texas; James Hicks, *In an official capacity as District Attorney of Taylor County*; Taylor County, Texas; City of Abilene, Texas,

*Defendants—Appellants*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CV-2847

———————————————————————

Before Southwick and Engelhardt, *Circuit Judges*.[*]

———————————————

[*] Judge James Dennis was a member of the original panel, concurring in part and dissenting in part from the panel opinion. *See Woodlands Pride, Inc. v. Paxton*, 157 F.4th 775, 789–803 (5th Cir. 2025) (Dennis, J., concurring in part and dissenting in part). Judge Dennis took inactive status from the Court on February 23, 2026, and therefore did not

No. 23-20480

Kurt D. Engelhardt, *Circuit Judge*:

The petition for panel rehearing is DENIED. The opinion issued November 6, 2025, is withdrawn and the following is substituted in its place.

\*     \*     \*

A Texas law regulates sexually oriented performances on public property and in the presence of minors. A drag performer and others in the drag industry brought a pre-enforcement challenge, alleging that the law facially violates the First Amendment and is unconstitutionally void for vagueness.[1] After a two-day bench trial, the district court agreed with the plaintiffs and permanently enjoined the appellants from enforcing the law. We vacate that injunction and remand.

## I.

## A.

Texas Senate Bill 12 ("S.B. 12") regulates "sexually oriented performances" on public property and in the presence of minors. *See* Tex. Health & Safety Code Ann. § 769.002; Tex. Loc. Gov't Code Ann. § 243.0031; Tex. Penal Code Ann. § 43.28. A "sexually oriented performance" is "a visual performance" that (1) features a performer who "is nude" or "engages in sexual conduct," and (2) "appeals to the prurient interest in sex." Tex. Penal Code Ann. § 43.28(a)(2).

For the first prong, S.B. 12 defines the relevant conduct. "Nude" means "entirely unclothed" or "clothed in a manner that leaves uncovered

---

participate in this decision to withdraw and substitute the panel opinion. This case is decided by a quorum under 28 U.S.C. § 46(d).

[1] Plaintiffs use the word "drag" to describe their activities and they call the law that they challenge a "drag ban." The text of the law does not include the word "drag."

No. 23-20480

or visible through less than fully opaque clothing any portion of the breasts below the top of the areola of the breasts, if the person is female, or any portion of the genitals or buttocks." Tex. Bus. & Com. Code Ann. § 102.051(1). "Sexual conduct" means: (1) "the exhibition or representation, actual or simulated, of sexual acts, including vaginal sex, anal sex, and masturbation"; (2) "the exhibition or representation, actual or simulated, of male or female genitals in a lewd state, including a state of sexual stimulation or arousal"; (3) "the exhibition of a device designed and marketed as useful primarily for the sexual stimulation of male or female genitals"; (4) "actual contact or simulated contact occurring between one person and the buttocks, breast, or any part of the genitals of another person"; or (5) "the exhibition of sexual gesticulations using accessories or prosthetics that exaggerate male or female sexual characteristics." Tex. Penal Code Ann. § 43.28(a)(1).

As for the second prong, Supreme Court precedent is instructive.[2] To appeal to the "prurient interest in sex," material, at a minimum, must be "in some sense erotic." *Ashcroft v. ACLU*, 535 U.S. 564, 579 (2002).

---

[2] When interpreting undefined terms in state statutes, the Supreme Court of Texas "presumes that the Legislature uses statutory language with complete knowledge of the existing law and with reference to it." *Amazon.com, Inc. v. McMillan*, 625 S.W.3d 101, 106–07 (Tex. 2021) (cleaned up). "Prurient interest in sex" is a term of art coined by the United States Supreme Court as one part of the "obscenity" definition. *See Roth v. United States*, 354 U.S. 476, 487 (1957) ("Obscene material is material which deals with sex in a manner appealing to prurient interest."); *Miller v. California*, 413 U.S. 15, 24 (1973) (building on *Roth* to clarify three-part test for obscene material, including "appeal[s] to the prurient interest in sex" as one element). We conclude the Texas Legislature invoked the Supreme Court's description of a "prurient interest in sex" by using this phrase, and that jurisprudence guides what conduct is arguably proscribed by S.B. 12. *See infra* Section II.A (explaining injury-in-fact analysis for Article III standing in pre-enforcement First Amendment challenges).

B.

S.B. 12 regulates sexually oriented performances in three ways. Section One prohibits a "person who controls the premises of a commercial enterprise" from "allow[ing] a sexually oriented performance to be presented on the premises in the presence of an individual younger than 18 years of age." Tex. Health & Safety Code Ann. § 769.002(a). It is enforced by the Attorney General of Texas, *see id.* § 769.002(c), who is an appellant here.

Section Two authorizes municipalities and counties to "regulate sexually oriented performances as the municipality or county considers necessary to promote the public health, safety, or welfare." Tex. Loc. Gov't Code Ann. § 243.0031(b). In exercising this power, municipalities and counties may not authorize a sexually oriented performance on public property or in the presence of individuals under the age of 18. *Id.* § 243.0031(c). Montgomery County, Taylor County, and the City of Abilene are the appellants to which Section Two confers authority.

Section Three establishes a Class A misdemeanor for engaging in a sexually oriented performance either (1) "on public property at a time, in a place, and in a manner that could reasonably be expected to be viewed by a child"; or (2) "in the presence of an individual younger than 18 years of age." Tex. Penal Code Ann. § 43.28(b). In Texas, district and county attorneys enforce state criminal laws. *See State v. Stephens*, 663 S.W.3d 45, 49–51 (Tex. Crim. App. 2021). Two appellants are authorized to enforce Section Three in their respective jurisdictions: Brett Ligon, the district attorney for Montgomery County; and James Hicks, the district attorney for Taylor County.

No. 23-20480

## II.

## A.

S.B. 12 has not been enforced yet. The plaintiffs—The Woodlands Pride, Inc.; Abilene Pride Alliance; 360 Queen Entertainment, LLC; Extragrams LLC; and Brigitte Bandit—brought a pre-enforcement challenge under 42 U.S.C. § 1983, alleging that the law facially violates the First and Fourteenth Amendments. The district court held a two-day bench trial, concluded that S.B. 12 is a facially unconstitutional restriction on speech, and enjoined the Attorney General of Texas, the City of Abilene, Taylor County, Montgomery County, and four district attorneys from enforcing it.[3] *See Woodlands Pride, Inc. v. Paxton*, 694 F. Supp. 3d 820, 851 (S.D. Tex. 2023). The appellants ask us to vacate the injunction.[4] Their first argument on appeal is that the plaintiffs lack standing. We review a district court's ruling on standing *de novo*. *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 215 (5th Cir. 2023).

Standing "is not dispensed in gross." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Plaintiffs "must demonstrate standing for *each claim* that they press against *each defendant*, and for *each form of relief* that they seek." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (emphasis added) (quotation marks and citation omitted). When plaintiffs seek injunctive relief, "for every defendant, there must be at least one plaintiff with standing to seek [the] injunction." *Id.* So for each appellant here, at least one plaintiff must have "(1) an 'injury in fact' that is 'concrete and particularized' and 'actual

---

[3] The district court alternatively concluded that S.B. 12 was unconstitutionally vague.

[4] Two defendants at the district court—Travis County district attorney, Delia Garza, and Bexar County district attorney, Joe D. Gonzalez—did not appeal the district court's injunction.

or imminent'; (2) is fairly traceable to th[at] defendant's actions; and (3) is likely to be redressed by a favorable decision." *Turtle Island Foods*, 65 F.4th at 215 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

In pre-enforcement free speech challenges, a plaintiff "need not have experienced 'an actual arrest, prosecution, or other enforcement action' to establish standing." *Barilla v. City of Houston*, 13 F.4th 427, 431 (5th Cir. 2021) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Chilled speech or self-censorship is an injury in fact if a plaintiff shows that (1) he intends to engage in a course of conduct arguably affected with a constitutional interest; (2) the course of action is arguably proscribed by statute; and (3) there is a credible threat of prosecution under the statute. *Turtle Island Foods*, 65 F.4th at 215–16 (citing *Susan B. Anthony List*, 573 U.S. at 159).[5]

A plaintiff "must support each element of standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Murthy*, 603 U.S. at 58 (quoting *Lujan*, 504 U.S. at 561). When a case has proceeded to final judgment, standing "must be supported adequately by the evidence adduced at trial." *El Paso County v. Trump*, 982 F.3d 332, 338 (5th Cir. 2020) (cleaned up).

---

[5] Although the analysis in this Section focuses on plaintiffs' First Amendment claims, it applies with equal force to plaintiffs' Fourteenth Amendment vagueness claim. In a facial vagueness challenge, chilled speech remains "a constitutional harm adequate to satisfy the injury-in-fact requirement." *Doe I v. Landry*, 909 F.3d 99, 114 (5th Cir. 2018) (quoting *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 754–55 (5th Cir. 2010)). But a plaintiff must claim a "serious interest in engaging in a course of conduct arguably affected with a constitutional interest but proscribed by statute." *Id.* at 115 (cleaned up). For the reasons explained herein—in the First Amendment context—plaintiffs The Woodlands Pride, Inc., Abilene Pride Alliance, Extragrams LLC, and Brigitte Bandit do not have standing to assert a facial vagueness challenge. Plaintiff 360 Queen Entertainment, by contrast, has standing to do so.

No. 23-20480

B.

We start with whether—and to what extent—each plaintiff has standing. To make this determination, we rely on the evidence presented at trial. *See id.*

1.

The Woodlands Pride, Inc. hosts an annual pride festival in Montgomery County, Texas. Children attend the festival, which includes on-stage drag performances. Woodlands Pride often says that its festival is "a reflection of a family-oriented community." It "want[s] to make sure" that this message of "family-oriented community" is "pushed out through [the] music that's played, [and] through everything you see," including "what's happening on the stage." To achieve this objective, a Woodlands Pride board member approves the music playlists and meets with all performers to "talk about dos and don'ts."

When asked by the district court whether the drag performances are "specifically tailored to a family aspect," the Woodlands Pride representative testified: "Our performances aren't specifically tailored to a family aspect, but they are tailored to mostly ensuring that there's no bad language in music and that it is a festival for everybody." "For lack of better terms," the representative testified, "this is a family friendly drag performance." And he confirmed that this is true for all Woodlands Pride performances.

The Woodlands Pride representative also testified that he could "confidently describe to [the drag performers] how to avoid making a performance appear that it appeals to the prurient interest in sex." There has never been any nudity at any of Woodland Pride's performances,[6] no

---

[6] After testifying several times that there is no nudity during the performances, including as defined by TEX. BUS. & COM. CODE ANN. § 102.051(1)(B), the

exhibition or representation of actual or simulated sexual acts or genitals, and no sexual gesticulations with exaggerated prosthetic penises. The performers "do a Conga line type thing and put their hands on each other's hips," and sometimes touch each other—including a "portion of their buttocks"—while dancing, but the representative testified that it is "just a dance routine" and does not appeal to the prurient interest in sex. He also testified that some of the performers may "twerk."

The Woodlands Pride festival also has vendors, including STI and STD testing vendors who hand out condoms and sexual lubricant. The plaintiffs argue that passing out condoms and sexual lubricant is arguably "the exhibition of a device designed and marketed as useful primarily for the sexual stimulation of male or female genitals."

None of the Woodlands Pride conduct introduced at trial arguably amounts to a "sexually oriented performance." A vendor handing out condoms and sexual lubricant is not "a visual performance," nor are STD and STI testing vendors "performers." *See* Tex. Penal Code Ann. § 43.28(a)(2). As to the drag performances, even if making contact with another performer's buttocks is arguably "sexual conduct" under S.B. 12, it is not proscribed if it does not appeal to the prurient interest in sex. None of the trial evidence indicates that the performances are "in some sense erotic." *See Ashcroft*, 535 U.S. at 579. Because Woodlands Pride does not intend to engage in conduct that is arguably proscribed by S.B. 12, it does not have standing to seek an injunction against any of the appellants.

---

representative testified on redirect that some performers exhibited nudity as defined by S.B. 12 because the performers showed cleavage and a portion of their buttocks. Only one exhibit introduced into evidence at trial depicts a Woodlands Pride drag performer's outfit. The performer is wearing what appears to be a long-sleeved leotard with fishnet tights.

No. 23-20480

2.

Abilene Pride Alliance is an organization based in Abilene, Texas, which is in Taylor County. Abilene Pride hosts various community-based and fundraising events, including drag brunches, drag bingo, and a pride parade and festival. There is no age restriction for Abilene Pride's events and Abilene Pride asks all performers to "[p]lease be age appropriate."

There is no nudity, as defined by S.B. 12, at Abilene Pride's drag performances. Nor is there actual or simulated sex or masturbation. Drag performers for Abilene Pride's events wear a variation of sequins, big hair, wigs, breastplates, hip pads, packers, and exaggerated jewelry.[7] A typical Abilene Pride drag performance involves "dancing, lip syncing, engaging with the audience by hugging, kissing on the cheek, [and] sometimes bumping hips." A drag performer's buttocks have "come into contact with attendees" on a "a few occasions where the venue has been crowded and as the entertainer was moving to engage with the crowd, they [sic] bumped into some folks." Performers also "[o]ccasionally" "do a hip bump with one of the audience members." Performers may have sat in audience members' laps too, but the Abilene Pride president provided conflicting testimony on this.[8] Drag performers' breasts or breastplates come into contact with attendees only when giving front-facing hugs or during "accidental bumping."

---

[7] Breastplates are prosthetic breasts. Hip pads are prosthetics that exaggerate the appearance of the performer's buttocks. Packers are prosthetics that drag performers wear under clothing to create the appearance of male genitalia.

[8] He testified that drag performers have never sat in the laps of attendees at any of the events that he has attended. His written declaration, however, stated: "On some occasions our drag performers give front-facing hugs or hip bumps to audience members or even sit in their laps." After the attorney read him this statement on cross-examination, he testified that performers "usually will just sit and continue lip syncing," and that he has never observed lap dances.

9

No. 23-20480

Abilene Pride's president testified that he does not think that Abilene Pride's performances involve sexual gestures or gesticulations. He is nonetheless concerned that others might think that the performances violate S.B. 12 because Abilene Pride has had protestors at its events before and, on one occasion, someone called the police.[9] The public health department has also attended Abilene Pride's festival to share information and hand out free condoms and sexual lubricant. As with the Woodlands Pride vendors who passed out condoms and sexual lubricant, the plaintiffs contend that this is arguably proscribed by S.B. 12.

None of the Abilene Pride conduct introduced at trial arguably amounts to a "sexually oriented performance." First, that people have protested Abilene Pride's events before has no bearing on whether S.B. 12 arguably proscribes the performances. Second, giving front facing hugs and accidentally bumping into others are common interactions that do not inherently appeal to the prurient interest in sex. Nor does the trial record contain evidence indicating that under the circumstances described here, these common interactions are "in some sense erotic." *See Ashcroft*, 535 U.S. at 579. So even if these actions constitute "actual . . . or simulated contact occurring between one person and the buttocks, breast, or any part of the of the genitals of another person," they are not arguably proscribed by S.B. 12. Tex. Penal Code Ann. § 43.28(a)(1)(D). And like the STI and STD testing vendors at Woodlands Pride's events, handing out condoms and sexual lubricant is not "a visual performance," nor is the public health department a "performer."

---

[9] The police arrived and asked questions but left without taking further action.

No. 23-20480

Because Abilene Pride does not intend to engage in conduct that is arguably proscribed by S.B. 12, it does not have standing to seek an injunction against any of the appellants.

3.

360 Queen Entertainment, LLC is a drag production company that books drag queens to perform on the patio of Tomatillos Restaurant & Bar in San Antonio. Tomatillos is owned by the father of 360 Queen's owner. The restaurant is in a strip mall with several other businesses that can view the patio "very clearly." 360 Queen and Tomatillos have an agreement that on show days, 360 Queen "controls" the patio from the morning until the show ends. Tomatillos provides restaurant service to the audience but is not otherwise involved. 360 Queen sells the tickets and decides who enters the show through the patio's primary entrance. While 360 Queen tries to restrict restaurant customers from entering the patio via the dining room, it has "had instances where children have run into the patio through [the] show; not because they have any interest in watching the drag show itself, but because there's a field in the back where a lot of kids tend to go and play while their parents are dining."

360 Queen does not typically allow children to attend its shows. This is not because the shows are "sexual in nature" or "detrimental to children," but rather to "create an environment where adults [can] enjoy dinner, enjoy drinks, enjoy entertainment, but not necessarily have to do it around other people's kids." It makes exceptions to this rule, however. The owner testified: "There have been situations where there are families dining inside and they have children with them . . . these families are very well aware of what drag is. And they have pleaded with us to allow them to come out onto the patio. And we have made exceptions in the past and allowed children to observe our drag show."

11

A picture introduced at trial depicts a 360 Queen drag performer who is fully clothed in a red dress and holding dollar bills. A different picture shows a 360 Queen drag performer who is wearing what appears to be a leotard. The 360 Queen owner described this outfit as "a very short leotard" and explained that the performer is "wearing butt pads that reveal her buttocks." Both images also demonstrate how the public can easily view the patio.

360 Queen performances include twerking—"a form of expression where you put your hands on your knees essentially and move your buttocks up and down rapidly"—and "death drops"—a dance move "where a performer will tuck one of their [sic] feet or legs behind their [sic] butt and then fall to the floor with the other leg extended." When asked whether the performers "simulate contact with the buttocks of another person," the owner testified that the performers sit on customers' laps while wearing thongs and one performer invited a "handsome" male customer "to spank her on the butt." When asked whether the performers "ever perform gesticulations while wearing prosthetics," the owner testified that in 360 Queen's most recent show, a drag queen "wore a breastplate that was very revealing, pulsed her chest in front of people, [and] put her chest in front of people's faces."

As to whether 360 Queen performances include nudity, the owner testified that a performer once had a wardrobe malfunction where a breastplate fell out and that some performers "wear sort of string bikinis that will cover the nipples but be very, very revealing around the buttocks."

Based on the evidence introduced at trial, 360 Queen's performances arguably include proscribed conduct. The owner described one performance where a drag queen, who was wearing a "very revealing" breastplate pulsed the breastplate in front of people and put the breastplate in people's faces.

This arguably constitutes "the exhibition of sexual gesticulations using . . . prosthetics that exaggerate . . . female sexual characteristics." *See* Tex. Penal Code Ann. § 43.28(a)(1)(E). He also described a second performance where an audience member was invited to spank a performer's buttocks. This arguably constitutes "actual contact or simulated contact occurring between one person and the buttocks . . . of another person." *Id.* § 43.28(a)(1)(D). Both performances are arguably "in some sense erotic," *see Ashcroft*, 535 U.S. at 579, and the owner testified that minors are sometimes present.

Because 360 Queen only holds performances in San Antonio, its claimed injury is not traceable to Abilene, Taylor County, Montgomery County, or the district attorney appellants. The Attorney General is the only appellant who 360 Queen could have standing to assert its claims against. Recall that the Attorney General enforces Section One, which prohibits a "person who *controls* the premises of a commercial enterprise" from "allow[ing] a sexually oriented performance to be presented on the premises in the presence of an individual younger than 18 years of age." Tex. Health & Safety Code Ann. § 769.002(a) (emphasis added).

The Attorney General argues that 360 Queen does not "control" the premises because a third party owns Tomatillos. Control is not necessarily synonymous with ownership, however. *See Control*, Black's Law Dictionary (11th ed. 2019) (defining "Control" as, *inter alia*, "[t]o exercise power or influence over"). Again, for a pre-enforcement First Amendment challenge, the question is whether a plaintiff's conduct is *arguably* proscribed by the statute. *Turtle Island Foods*, 65 F.4th at 215–16. "Arguably proscribed" does not require that the plaintiff's interpretation of the challenged law be the *best* interpretation. *Id.* at 218. The owner of 360 Queen testified that 360 Queen controls the patio on show days, sells the tickets, and decides who enters the show through the patio's primary

No. 23-20480

entrance. Put otherwise, 360 Queen "exercise[s] power or influence" over the premises. *See supra* BLACK'S LAW DICTIONARY. That is sufficient for this posture.[10]

Our determination that 360 Queen seeks to engage in arguably proscribed conduct does not conclude the standing inquiry. It does not even conclude the injury-in-fact inquiry. To satisfy the injury-in-fact requirement, the conduct must be arguably affected with a constitutional interest and there must be a credible threat of enforcement. *Turtle Island Foods*, 65 F.4th at 215–16. If an injury in fact is established, it must also be traceable to the Attorney General and redressable by the injunction sought. *Id.* at 215. "In pre-enforcement First Amendment challenges like this one, we assume a credible threat of prosecution in the absence of compelling contrary evidence, so long as the challenged law is non-moribund." *Inst. for Free Speech v. Johnson*, 148 F.4th 318, 329 (5th Cir. 2025) (cleaned up).

Although it "falls only within the outer ambit of the First Amendment's protection" and is subject to restrictions, *Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 509 (5th Cir. 2021) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000)), nude dancing generally constitutes expressive conduct, *id.* (citing *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566 (1991)).

---

[10] In a footnote, the Attorney General asserts this same position—that 360 Queen does not "control" Tomatillos—to argue that 360 Queen's claims against him run afoul of sovereign immunity. He correctly states that for *Ex parte Young* to apply, the defendant-official "must have '*some* connection with the enforcement of the [challenged] act.'" *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022) (emphasis in original) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). But the Attorney General has more than *some* connection with the enforcement of Section One. He has the sole authority to (1) recover civil penalties for Section One violations and (2) obtain injunctions to restrain Section One violations. *See* TEX. HEALTH & SAFETY CODE ANN. § 769.002(c). He therefore has the "particular duty" to enforce—that is, to compel or constrain compliance with—Section One, so the injunction 360 Queen seeks would prevent the purported constitutional violation that 360 Queen fears. *See Tex. All. for Retired Ams.*, 28 F.4th at 672.

360 Queen's performances are therefore *arguably* affected with a constitutional interest.[11] We also assume a credible threat of enforcement, given the lack of evidence demonstrating otherwise and because S.B. 12 is non-moribund. *See Inst. for Free Speech*, 148 F.4th at 329. 360 Queen has established an injury in fact.

Traceability and redressability are the final hurdles for standing. 360 Queen satisfies these "dual elements" if its claimed injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court" and it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 330 (cleaned up); *see also Lujan*, 504 U.S. at 560–61.

360 Queen's claimed injury is traceable to the Attorney General, who enforces Section One, and its desired injunction would eliminate the threat of enforcement. *See supra* note 10; *see also Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 513–14 (5th Cir. 2017) (noting "significant overlap" between the redressability and traceability inquiries

---

[11] We have genuine doubt, however, that pulsing prosthetic breasts in front of people, putting prosthetic breasts in people's faces, and being spanked by audience members are actually constitutionally protected—especially in the presence of minors. While nude dancing receives *some* constitutional protection, "intentional contact between a nude dancer and a bar patron is conduct beyond the expressive scope of the dancing itself. The conduct at that point has overwhelmed any expressive strains it may contain. That the physical contact occurs while in the course of protected activity does not bring it within the scope of the First Amendment." *Hang On, Inc. v. City of Arlington*, 65 F.3d 1248, 1253 (5th Cir. 1995). "It is possible to find some kernel of expression in almost every activity a person undertakes . . . but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *Id.* (quoting *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989)). Even though the performers here are not fully nude, *Hang On*'s reasoning is persuasive. At a minimum, *Hang On* confirms that each action in a performance is not necessarily protected even if the performance as a whole may receive some constitutional protection.

and *Ex parte Young*'s application). 360 Queen therefore has standing to seek an injunction against the Attorney General. Because one plaintiff with standing for a given defendant is sufficient, we need not determine whether the remaining two plaintiffs have standing to seek an injunction against the Attorney General. *See Murthy*, 603 U.S. at 61.

4.

Extragrams LLC is a drag telegram company that provides drag entertainment for celebrations, events, and parties, and hosts drag bingo. Extragrams' performances are primarily in Austin, Texas, but it has also performed in San Antonio, Dallas, Houston, Fredericksburg, Round Rock, and Pflugerville.

This list does not include Abilene. Nor are any of these cities located in Taylor or Montgomery County. Because Extragrams does not seek to engage in arguably proscribed conduct in Abilene, Taylor County, or Montgomery County, its claimed injury is not traceable to these appellants or the district attorney appellants. Accordingly, Extragrams does not have standing to seek an injunction against the remaining appellants.

5.

The final plaintiff, Brigitte Bandit, is a drag performer who lives in Austin, Texas, which is in Travis County.[12] Most of her performances are in Travis County but she has performed in Houston, San Marcos, San Antonio, and Dallas. As of September 9, 2023, Bandit had performances scheduled in

---

[12] The district court granted this plaintiff permission to proceed under the pseudonym "Brigitte Bandit." *See Woodlands Pride*, 694 F. Supp. 3d at 829 n.3. "Bandit" is a drag character who dresses as a female. Because the actual gender of this plaintiff is not disclosed in the record, and "Bandit" portrays a female character, we refer to the character "Bandit" as a female.

Denton and Abilene.

Bandit typically performs in bars and nightclubs that are restricted to ages 21+, but she also performs at drag brunches (that are sometimes restricted to ages 21+ and sometimes open to all ages) and at "all-ages shows like drag story time." Most of Bandit's performances are not sexual, but she does have "some sexual shows." She testified that she would not perform one of her sexual shows at an all-ages event, however.

Bandit changes her performance and appearance depending on the audience. When performing for children, she "want[s] to appeal to something that would be interesting to kids." She has dressed as characters from *Toy Story* and *The Little Mermaid*, and "like a big pink princess." She testified that, when performing before kids, her costumes are "typically pretty covered," presumably meaning modest.

Bandit does not have standing to seek an injunction against the remaining appellants. Bandit has not performed, nor expressed an intent to perform, in Montgomery County, so her claimed injury is not traceable to Montgomery County or its district attorney. While Bandit testified that she had a performance scheduled in Abilene, her testimony did not include any information about this performance. Nor does the plaintiffs' brief reference Bandit's intent to perform in Abilene. Bandit's testimony stressed that her sexual performances are restricted to 18+ or 21+ audiences, and no evidence indicates that an Abilene performance would be any different. Bandit's claimed injury therefore is not traceable to the City of Abilene, Taylor County, or the Taylor County district attorney either.

## III.

Because the plaintiffs only have standing to assert their claims against the Attorney General, and the Attorney General only has the authority to enforce Section One, the remaining issues on appeal are whether the

plaintiffs have established that Section One, on its face, violates the First Amendment or is unconstitutionally vague. Start with the First Amendment questions.

The choice to litigate a facial challenge "comes at a cost": facial challenges are "hard to win." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). But this is a feature, not a bug. "Claims of facial invalidity often rest on speculation about the law's coverage and its future enforcement." *Id.* (internal quotation marks and citation omitted). Such claims also "threaten to short circuit the democratic process by preventing duly enacted laws from being implemented in constitutional ways." *Id.* (internal quotation marks and citation omitted). The *Moody* framework for facial free speech challenges safeguards the democratic will and states' interests while still "provid[ing] breathing room for free expression." *Id.* (cleaned up).

To determine if a law, on its face, violates the Free Speech Clause of the First Amendment, we must ask whether "a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* (alterations adopted) (quoting *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021)). This inquiry begins with an assessment of the law's scope: "What activities, by what actors," does the law "prohibit or otherwise regulate?" *Id.* at 724. We then determine which of the law's applications violate the First Amendment. *Id.* at 725. And finally, we take the unconstitutional applications and "measure them against the rest." *Id.* The law is not facially invalid unless its "unconstitutional applications substantially outweigh its constitutional ones." *Id.* at 724. The

district court did not conduct this analysis, nor did the parties brief the proper standard or adequately develop the record.[13]

Consider, next, plaintiffs' facial vagueness challenge. First Amendment overbreadth and Fourteenth Amendment vagueness claims overlap conceptually but remain distinct claims. *United States v. Williams*, 553 U.S. 285, 304 (2008) ("Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause . . . ."); *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983) ("[W]e have traditionally viewed vagueness and overbreadth as logically related and similar doctrines."). The Supreme Court has explained two key rules concerning this conceptual overlap. First, facial vagueness challenges are permissible when constitutionally protected activity is implicated. *Kolender*, 461 U.S. at 358 n.8. Second, when First Amendment rights are implicated, courts must apply a more stringent version of the substantive vagueness standard. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982). A statute is unconstitutionally vague when it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "authorizes arbitrary or discriminatory enforcement." *Roy v. City of Monroe*, 950 F.3d 245, 252 (5th Cir. 2020) (cleaned up). In First Amendment contexts, we "will not hold that the ordinance is unconstitutionally vague on its face if 'it is clear what the ordinance as a whole prohibits' or if the ordinance 'is surely valid [*i.e.* not vague] in the vast majority of its intended applications.'" *Id.* (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000)). In concluding S.B. 12 is unconstitutionally vague on its face,

---

[13] To be fair, the Supreme Court decided *Moody* after the parties briefed this appeal, and the Attorney General promptly filed a Rule 28(j) letter to notify us of its relevance. And while *Moody* espoused existing law, that existing law had frequently been overlooked. *See Moody*, 603 U.S. at 743–45 (vacating judgments from this court and the Eleventh Circuit because neither court applied the proper standard for facial free speech challenges).

the district court failed to clearly analyze the statute in terms of this still "daunting" facial vagueness standard. *Id.*

We are unequipped to undertake these tasks in the first instance, and remand for the district court to do so. *See Ficher v. Bickham*, 70 F.4th 257, 260 (5th Cir. 2023) ("[W]e are a court of review, not first view.").

\*    \*    \*

We VACATE the injunction against the appellants and REMAND. On remand, the district court is instructed to (1) dismiss the claims against Brett Ligon, James Hicks, Montgomery County, Taylor County, and the City of Abilene; (2) reconsider the plaintiffs' facial First Amendment challenges to Section One of S.B. 12 under the *Moody* framework; and (3) reconsider the plaintiffs' facial vagueness challenge to Section One of S.B. 12 in light of *Roy*. The pending motion for stay pending appeal is denied as moot.